ESTATE OF FREDERICK CECIL BARTHOLOMEW, A MINOR, AND MYLLICENT BARTHOLOMEW, GUARDIAN, PETITIONERS, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 200. Promulgated November 24, 1944.

*Baldwin Robertson, Esq.*, for the petitioners.
*Ralph E. Smith, Esq.*, and *E. A. Tonjes, Esq.*, for the respondent.

## OPINION.

ARNOLD, *Judge*: The principal question, namely, the deductibility of attorneys' fees and costs, has been restricted in scope by the stipulations and agreement of counsel. The parties are agreed that the attorneys' fees and court costs involved herein were paid during the taxable years pursuant to orders of court, and that the amounts so paid were reasonable. Their dispute is over the propriety of the deductions under the applicable statutory provisions, section 23, Revenue Act of 1938, and section 23, Internal Revenue Code, as amended by section 121, Revenue Act of 1942.[1]  Section 121 (d) of the 1942 Act makes the amendment applicable to taxable years beginning after

---

[1] SEC. 121. NON-TRADE OR NON-BUSINESS DEDUCTIONS.

(a) DEDUCTIONS FOR EXPENSES.—Section 23 (a) (relating to deduction for expenses) is amended to read as follows:

"(a) EXPENSES.—

"(1) TRADE OR BUSINESS EXPENSES.—

(A) IN GENERAL.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered ; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business ; and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.

    *       *       *       *       *       *       *

"(2) NON-TRADE OR NON-BUSINESS EXPENSES.—In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income."

December 31, 1938; section 121 (e) makes the amendment retroactive as to the Revenue Act of 1938 and prior revenue acts.

The respondent contends that the sums paid for legal services in connection with litigation concerning the adoption of Freddie by his aunt, and the litigation with respect to who was to have custody of Freddie and who was to be guardian of his estate, are not ordinary and necessary expenses for the reason that the amounts were not paid or incurred for the production or collection of income, nor for the management, conservation or maintenance of property held for the production of income. He contends that the evidence shows clearly that the laying out of attorneys' fees is directly related to a grievous dispute among members of Freddie's immediate family about who was to have custody and control of the person of Freddie and who was to have custody and control of his estate. Respondent denies that the dispute related to Freddie's trade or vocation as an actor in motion pictures, or to the rendition of services to MGM under a contract which the latter was at all times ready, able, and willing to perform, or to the production or collection of income or the management, conservation, or maintenance of property held for the production of income. He asserts that the entire record discloses that the fees related directly to a quest for authority and control over Freddie and his estate and section 23 (a) should not be construed to permit the fees and court costs here involved to be treated as ordinary and necessary business expense.

In our opinion respondent's argument ignores one of the cardinal factors in this case. It was Freddie who earned the income. He is the taxpayer before us, not Myllicent, *Van Wart* v. *Comm.* (1935), 295 U. S. 112; *Freuler* v. *Helvering* (1934), 291 U. S. 35. He had no legal right to enter into contracts. His minority forced him to conduct all of his professional business transactions through a guardian. At one time he had two court-appointed guardians, one of his person and one of his estate, which was in itself productive of litigation. The original transaction which started Freddie on his professional career was executed by Myllicent as guardian. His rise to fame swiftly followed, but equally swift was the rise in the number of claimants seeking a share of his mounting earnings. Fortified by the provisions of section 197 of the Civil Code of California,[2] his parents filed numerous actions directed toward obtaining Freddie's earnings or his estate, or a portion of his estate and earnings. Had his parents succeeded in their design, the earnings as well as the accumulated earnings would have been theirs, not his. Myllicent countered

---

[2] "The father and mother of a legitimate unmarried minor child are equally entitled to its custody, services and earnings. If either the father or mother be dead or unable or refuse to take the custody or has abandoned his or her family, the other is entitled to its custody, services and earnings."

these and other suits in various ways in order to increase his earnings and to preserve and protect the income and accumulated earnings for him.

The litigation with MGM, although compromised, resulted in greatly increased earnings. The adoption proceedings were but one of the steps devised to prevent the parents from appropriating Freddie's past, present, and future earnings to themselves. Thereafter the parents had no legal rights to his earnings. Sec. 229, Civil Code of California. Myllicent's purpose was to preserve to Freddie the fruits of his own labors. That Myllicent did not seek by these proceedings to appropriate Freddie's earnings to herself is apparent in that she regularly reported to the court during the taxable years all the earnings as belonging to Freddie. She sought and obtained the approval of the court with respect to her stewardship. Nowhere in this record is there any indication that Myllicent was prompted by selfish motives or personal aggrandizement. On the contrary, the record shows that her every effort was toward securing for her ward the earnings derived from his personal services. Our findings show the suits and countersuits filed by various parties, and we believe no useful purpose would be served by further reviewing them. All the contests, whether waged by parents or others, had a connection either direct or indirect with his past, present, or future earnings, and his right to their possession and enjoyment. Clearly the actions, except those instituted by Myllicent, were adverse to his interests, and the issues were bitterly contested.

We have heretofore held that if the "original transaction was proximately related to the production or collection of income, any litigation arising out of that transaction involving its tax consequences would also proximately relate to the production or collection of income," so that "fees and expenses paid in connection with such litigation would be deductible under section 121." *Charles N. Manning*, 3 T. C. 853, 874; *Walter S. Heller*, 2 T. C. 371; appeal pending, C. C. A., 9th Cir. The original transaction here was a contract for the continuing services of Freddie as a motion picture actor over a period of years. His earnings and estate were derived from this contract, as changed by agreement of the parties, or from his personal appearances, or from his endorsement of articles, and the like, which income was derived from his professional standing. It seems reasonable to hold that any litigation which sought to increase the production of income, or to protect the right to income produced, being produced, or to be produced, or to prevent others from acquiring a right, title, or interest therein would be proximately related to "the production or collection of income" specified in section 121. The term "income," as the Senate Committee on Finance pointed out in its report accompanying H. R. 7378, which

later became the Revenue Act of 1942, "comprehends not merely income of the taxable year but also income which the taxpayer has realized in a prior taxable year or may realize in subsequent taxable years, and is not confined to recurring income but applies as well to gain from the disposition of property." Freddie's earnings were certainly the product of his efforts, and litigation expenses which protected his right thereto would appear to be within the statutes. Cf. *Commissioner* v. *Heininger*, 320 U. S. 467.

The other class of expenditures deductible under section 121 relates to expenditures incurred for the management, conservation, and maintenance of property held for the production of income. In so far as this case is concerned, such expenditures relate to that part of the litigation which sought to reach the estate of the minor. This estate was estimated in 1937 at $20,000, at $90,000 to $100,000 in 1938 and 1939, and at a lesser but substantial sum in 1940 and 1941. His returns for the taxable years show that part of his estate consisted of government obligations, interest on $5,000 of which, amounting to $137.50, was tax-exempt for 1939, 1940, and 1941. Some of the litigation mentioned in our findings involved Freddie's entire estate; some involved only a portion thereof. The portion involving tax-free interest and the amount of fees and costs allocable under section 24 (a) (5), Internal Revenue Code, is hereinafter considered.[3] The expenses of this litigation were not such as should be capitalized, for it involved no recovery of capital as in *Helvering* v. *Stormfeltz* (C. C. A., 8th Cir.), 142 Fed. (2d) 982; and no defense of Freddie's title thereto as in *Bowers* v. *Lumpkin* (C. C. A., 4th Cir.), 140 Fed. (2d) 927. The litigation sought to strip him of this property, which his returns show was producing income to him. It requires no extension of the statutory language to say that Freddie's estate to the extent thereof was property held for the production of income. Nor do we think that we do violence to the spirit or literal meaning of the section when we hold that, in so far as his legal expenses were attributable to protecting and retaining his estate, such expenditures were normal, ordinary, and necessary for the management, conservation, and maintenance of his property. Cf. *Longhorn Portland Cement Co.*, 3 T. C. 310.

Respondent has tentatively recognized that some of the litigation expenses may be deductible by arguing that the proof will not permit the lump sum fees to be allocated and, in the alternative, that if some allocation must be made on authority of *Cohan* v. *Commissioner*

---

[3] SEC. 24. ITEMS NOT DEDUCTIBLE.

(a) GENERAL RULE.—In computing net income no deduction shall in any case be allowed in respect of—

 \*     \*     \*     \*     \*     \*     \*

(5) \* \* \* or any amount otherwise allowable under section 23 (a) (2) which is allocable to interest \* \* \* wholly exempt from the taxes imposed by this chapter;

 \*     \*     \*     \*     \*     \*     ■

(C. C. A., 2d Cir.), 39 Fed. (2d) 540, the amount should not exceed 5 percent of the total claimed. We are unable to agree with respondent's allocation. We are persuaded by the evidence that at least 90 percent of the litigation expenses are deductible under section 23 (a) (1) or that portion of section 23 (a) (2) relating to expenses paid "for the production or collection of income," and that only 10 percent thereof is deductible under section 23 (a) (2), relating to expenses paid for "the management, conservation or maintenance of property held for the production of income." Of this 10 percent, it is our opinion that the amount thereof allocable to property held for the production of income which produces tax-free interest is one-tenth thereof, or 1 percent of the attorneys' fees and court costs for the taxable years 1939, 1940, and 1941. No allocation is necessary for 1938, as petitioner's return shows no tax-free interest for that taxable year.

We find no case with analogous facts. *Estate of Edward W. Clark III*, 2 T. C. 676, cited by respondent, involved attorney fees in opposing claims of alleged mismanagement of a trust, which is factually distinguishable from the present case. Here the fully developed facts show the litigation in which the fees were paid concerned ordinary and necessary expenses (a) of the business, (b) for the production or collection of income, or (c) for the conservation of property held for the production of income, and not mismanagement of the estate. There, no part of the fee paid was "for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income." *Gloria Laura Morgan Vanderbilt*, 39 B. T. A. 43; affd., 107 Fed. (2d) 1023, on authority of *Van Wart* v. *Commissioner*, *supra*, involved attorney fees paid by the guardian of a minor's estate pursuant to order of court, but the minor was not engaged in business. Likewise, in *Van Wart* v. *Commissioner*, *supra*, the deduction of attorney fees by a minor was denied by the Supreme Court, which pointed out "The ward was not engaged in any business. So far as appears, the same is true of the guardian." *Estate of Elizabeth Felt*, 44 B. T. A. 593 (1941), denied the deduction by the conservator or guardian of the estate of an incompetent of the fees of conservator, guardian, attorney, accountant, court costs, etc., principally upon the ground that the taxpayer through her guardian was not engaged in carrying on a trade or business. Cases involving legal or accounting expenditures for preparing tax returns, tax litigation, securing refunds of taxes and interest thereon, are not in point, as none of the attorney fees or court costs herein was paid for such purposes.

The second question is petitioners' right to deduct one-half of the compensation paid Edward Reed for services rendered to Freddie,

the other half thereof being conceded by taxpayer to be nondeductible. We are of the opinion that this record fairly shows that Reed's services were necessary to the performance by the minor of his contract. Reed was Freddie's chauffeur and at the same time his bodyguard. On account of his tender age it was necessary that Myllicent be with him at the studio and on location to look after him and coach him for his role. Neither Freddie nor Myllicent could drive, and a motor vehicle was necessary to transport him, and at times his trailer dressing room, to and from the studio and to and from location. We have held the cost of transportation in going to and returning from a taxpayer's place of business is not deductible as a business expense. *Frank H. Sullivan*, 1 B. T. A. 93; *E. C. O'Rear*, 28 B. T. A. 698; affirmed on another point, 80 Fed. (2d) 473. But here more is involved than cost of transportation to and from taxpayer's place of business. Sometimes it was necessary for him to go out on location. The automobile and trailer dressing room were necessary and were used by Freddie in the performance of his contract and in furtherance of his profession. In order to use the automobile and the mobile dressing room he had to employ a chauffeur, who also doubled as a bodyguard, due to threats to kidnap Freddie. We have found as a fact that one-half of Reed's cash compensation in 1938, which was less than half of his total compensation, was ordinary and necessary expense incident to Freddie's profession. Our finding is in accordance with the evidence and is consistent with respondent's determination that one-half of the depreciation of the automobile is deductible as ordinary and necessary business expense. We hold, therefore, that, under the special conditions existing here, one-half of Reed's cash compensation is deductible. Cf. *Joe May*, 39 B. T. A. 946, which involved transportation to and from movie studios; *Harry F. Canelo*, 41 B. T. A. 713, 733, which allowed, *inter alia*, 70 percent of the wages paid a chauffeur; and *John J. Ide*, 43 B. T. A. 799.

Respondent disallowed one-half of the depreciation claimed on Freddie's automobile for 1938 on the ground that only one-half of the use of the automobile was for business purposes. Petitioner offered no proof that he was entitled to any larger amount than that allowed, and on this issue respondent's determination is approved.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

LEECH, DISNEY, and KERN, *JJ.*, concur only in the result.

---

MURDOCK, *J.*, dissenting: Freddie was regularly engaged in business as a motion picture actor. A part of the attorneys' fees was deductible as ordinary and necessary expenses paid in carrying on that

business. Sec. 23 (a) (1). These would include the fees incident to the suits involving agents' commissions, the injunction suit, and the new contract, and reasonable fees incident to the appointment of a guardian to look after contracts and business affairs for the minor. But I find no section of the statute under which the other fees would be deductible, even though Myllicent went through all of this litigation for the purpose of preserving Freddie's earnings for his benefit alone, and even though she formally relinquished her right as parent to those earnings.

These other attorneys' fees to which I refer are allowed in the report as deductions under section 23 (a) (2) as "non-trade" or "non-business" expenses. If they were really expenses of collecting or producing income, they would relate directly to the business and would be deductible under (1), not (2). Cf. *Ralph D. Hubbart*, 4 T. C. 121. Four cases, *Clark*, *Vanderbilt*, *Van Wart*, and *Felt*, are distinguished in the prevailing opinion on the ground that no business was carried on in those cases, whereas Freddie had a business. Obviously, this distinction will not do for present purposes, since the deductions are being allowed as nonbusiness expenses and the existence of a business is not necessary.

These additional attorneys' fees were not "non-trade" or "non-business" expenses within the meaning of section 23 (a) (2). In the first place, they had nothing to do with producing or collecting the income from Freddie's acting. Freddie produced that income without any benefit from these suits and MGM paid it willingly, so that the suits served in no way to assist in producing or collecting it. None of the suits to which I refer had anything to do with the collection or production of the income.

Neither are the expenditures deductible as ordinary and necessary expenses paid or incurred in the management, conservation, or maintenance of property held for the production of income. This provision means, held for the production of taxable income. See section 24 (a) (5). Only an undisclosed part of Freddie's property was held for the production of taxable income. The most that can be said is that the protracted family litigation was, from Freddie's standpoint, for the conservation of all of Freddie's property for whatever purpose it was held so that it would be his property rather than the property of his natural parents. There is nothing in the statute allowing the deduction of expenditures of that kind. It has been held that expenditures of conservation in the sense of protecting property from adverse attack are not deductible. *Bowers* v. *Lumpkin*, 140 Fed. (2d) 927; *John W. Willmott*, 2 T. C. 321. Not all of the attorneys' fees were deductible.

TURNER, *J.*, agrees with this dissent.