JOHN C. BRUTON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10228. Promulgated October 31, 1947.

*Edward H. Schlaudt, Esq.,* for the petitioner.
*Scott A. Dahlquist, Esq.,* for the respondent.

#### OPINION.

ARNOLD, *Judge*: This proceeding involves personal income tax for the calendar year 1943 in the amount of $174.89. The sole matter in dispute is the deductibility, as ordinary and necessary expenses paid in carrying on petitioner's trade or business, that of a practicing lawyer, of amounts paid by him in 1942 and 1943 for taxicab fares exclusively for transportation between his place of residence and law office.

As the taxable year involved is 1943, it automatically includes adjustments in income tax liability for the calendar year 1942.

·We find the facts as stipulated by the parties in a stipulation filed at the hearing, as follows:

1. Petitioner is an individual with offices at 48 Wall Street, New York 5, N. Y. Federal income tax returns, prepared on the cash basis, for the calendar years

1942 and 1943 here involved were filed by petitioner with the Collector of Internal Revenue for the Second District of New York, Custom House, New York.

2. Prior to December 1940, petitioner was a practicing lawyer, associated with the law firm of Sullivan & Cromwell, 48 Wall Street, New York, N. Y., having been admitted to the New York State Bar in the year 1933.

3. In December of 1940 petitioner underwent a surgical operation performed by Dr. Tracy J. Putnam, Head of the Neurological Institute, Presbyterian Hospital, New York, N. Y., for the removal of a cerebral cyst from his brain.

4. During the aforesaid operation, there occurred the destruction of nerve tissue in the cerebral area of petitioner's brain.

5. As a result of the aforesaid destruction of brain tissue, petitioner suffered partial paralysis of the entire right side of his body, a partial loss of muscular coordination throughout his entire body and an impairment of his ability to maintain equilibrium; however, his reason was unimpaired.

6. From December 1940 until late in the year 1941, petitioner was completely invalided, received continuous medical treatment and required the constant attendance of a male nurse.

7. Late in the year 1941, petitioner's condition began to improve slowly and by the end of the year, petitioner was able to walk four of five steps while supported and guided by another individual. By the end of January 1942, petitioner was able to take one or two steps without assistance other than a cane; however, he still required continual theraputic treatment and the constant attendance of a nurse.

8. In late January of 1942, petitioner determined to return to the practice of law with the aforesaid firm of Sullivan & Cromwell and inquired of Dr. Putnam as to what arrangements might be made to render this possible. Dr. Putnam referred the case to Dr. William B. Snow, Head of the Physiotherapy Department of the Neurological Institute of the Presbyterian Hospital. Dr. Snow consented to petitioner's return to work only on condition that petitioner continue to receive physiotherapy treatments, live in a building equipped with a swimming pool in which petitioner could take daily theraputic exercise, and arrange for assistance and special transportation to and from his office.

9. In the early summer of 1942, petitioner established residence at The London Terrace, 470 West 24th Street, New York, N. Y., which is located more closely to his office than any available, adequate living quarters equipped with a swimming pool in the Borough of Manhattan.

10. Thereafter, petitioner arranged for taxicab service to transport him to and from his residence and his office.

11. Petitioner's above described condition of partial paralysis and lack of equilibrium and muscular coordination, although gradually improved by the slow and partial regrowth of the destroyed tissue, continued throughout the entire calendar years 1942 and 1943 to such an extent that petitioner could not drive a car or walk farther than twenty feet without the support and guidance of another individual. Throughout any attempt to walk unaided, regardless of the distance, petitioner's progress was violently spasmodic and subject to abrupt termination at any time by a complete loss of either balance, direction or muscular control in which event petitioner collapsed, helpless and unable to regain any upright position without assistance from another individual.

12. Petitioner's physical condition throughout 1942 and 1943 precluded use of public conveyances in going to and from his office.

13. During the calendar years 1942 and 1943, petitioner earned taxable gross income from the practice of law in the amount of $9,000 per annum. In each of such years, the practice of law was petitioner's sole source of taxable income.

Daily attendance at his office was necessary to enable petitioner to practice law and to earn said gross income. Petitioner did not leave his office for lunch because of the extreme physical difficulty of doing so except on rare occasions when others accompanied him.

14. During the calendar years 1942 and 1943, petitioner expended $539 and $528, respectively, in taxicab fares exclusively for transportation between his residence and his place of business. Such expenditures represented the most inexpensive means of individual transportation to and from his office available to petitioner. Petitioner claimed the aforesaid amounts as deductions in his income tax returns for such years and they were disallowed by the respondent.

The only question for our determination is whether the amounts paid by petitioner in 1942 and 1943 exclusively for transportation in traveling to and from his place of residence and office are, under the facts and circumstances, deductible as ordinary and necessary expenses paid during the taxable years in carrying on petitioner's trade or business, that of a practicing lawyer, within the intent and meaning of section 23 (a) (1) (A), Internal Revenue Code. Respondent disallowed the deductions.

Petitioner contends that as his daily attendance at his office was required and, as he could neither drive, walk, nor travel by public conveyance, the use of a taxicab was necessary, without which he could not have practiced law or produced any income whatever; that on account of his physical condition the necessity of the expenditure is absolute and, while not usual, it is ordinary within the meaning of the statute because it is of the type of expense which would ordinarily be incurred by anyone similarly situated and is the cost of the normal method of dealing with the situation in which the taxpayer finds himself. He contends the expense was incurred in carrying on his trade or business because it was occasioned solely by the conduct of the business, would not have been incurred had he not been so engaged, and was absolutely essential to the conduct of his business; that it was neither a personal nor living expense, was related directly and exclusively to the production of his income, and was not a matter of personal comfort, choice, or convenience. Therefore, he contends the taxicab expense was necessarily incurred in carrying on his trade or business and is deductible as a business expense.

The allowance of deductions from gross income does not turn on general equitable considerations. It is a matter of legislative grace, and only as there is clear provision therefor can any particular deduction be allowed. *New Colonial Ice Co.* v. *Helvering*, 292 U. S. 435.

Treasury Regulations 111, section 29.23 (a) (2), states:

\* \* \* Only such expenses as are reasonable and necessary in the conduct of the business and directly attributable to it may be deducted \* \* \*. Commuters' fares are not considered as business expenses and are not deductible.

In *Commissioner* v. *Flowers*, 326 U. S. 465, the Supreme Court said that section 23 (a) (1) (A) of the code was to be contrasted with the

provisions of section 24 (a) (1), disallowing any deductions for "personal, living, or family expenses," and was to be read in the light of the interpretation given it by section 19.23 (a) (2) of Treasury Regulations 103, and that the regulation is deemed to possess implied legislative approval and to have the effect of law. Treasury Regulations 111, section 29.23 (a) (2), on the issue here presented, is to the same effect. In denying the taxpayer a deduction for railroad fares in traveling between his home in Jackson, Mississippi, and his place of business in Mobile, Alabama, as an ordinary and necessary business expense, the Court said that "whether he traveled three blocks or three hundred miles the nature of these expenditures remained the same."

The deductions here claimed must be denied if they do not come strictly within the provisions of section 23 (a) (1) (A) of the code. By the language of that section, to be deductible, the expenses must be paid or incurred during the taxable year in *carrying on* the trade or business. Commuters' fares by the regulation quoted are not business expenses. No exception of any kind is made on account of the physical condition of the taxpayer either by statute or by the regulations interpreting the statute.

Petitioner cites and relies on the case of *A. L. Miller*, 29 B. T. A. 1061; reversed on another point, 84 Fed. (2d) 415. In that case, prior to the taxable year decedent Hawks had suffered a stroke of paralysis which rendered it impossible for him to attend to his business activities unless transported to them from his home and from one place to another. He was a man of varied interests, owned stock in at least nine corporations, and was an officer or director and actively interested in at least seven. He also owned a farm and other property in which he was actively interested. In the conduct of his various business interests the use of an automobile and chauffeur was necessary. The automobile was not used exclusively for transportation between the decedent's residence and place of business, as was the taxicab service for which the deduction here is claimed. The executrix was allowed a deduction for half the cost of the maintenance of the automobile and services of a chauffeur because to this extent they were attributable to Hawks' business activities. The allowance of this deduction was not by reason of his physical condition.

In the case of *Estate of Frederick Cecil Bartholomew*, 4 T. C. 349, also cited and relied upon by petitioner, the taxpayer was a motion picture actor, a minor, too young to drive a car. A chauffeur, who also acted as a bodyguard, was employed to drive the minor's automobile to and from his home, studio, and "location" when making pictures away from the studio. When on location, the automobile was used to haul a trailer for use as a dressing room. We held that half

the expense and depreciation on the automobile and half the cost of the chauffeur were business expenses and deductible as such. We did not allow deduction of the expenses involved in transportation to and from the taxpayer's place of business.

Petitioner in his brief also relies on the case of *Frank H. Sullivan*, 1 B. T. A. 93. There the taxpayer, who was engaged in the practice of law as a member of a partnership, residing about 50 minutes' ride by automobile from his office, was denied a deduction for operating costs and depreciation on his automobile in going to and returning from his office as an ordinary expense paid or incurred during the taxable year in carrying on his trade or business. The petitioner quotes from the opinion in that case as sustaining his contention that the expenses here involved were business expenses necessarily incurred in his practice of the law as follows:

> The deduction authorized by the sections of the statute, quoted above, plainly contemplates necessary items of expense in conducting business, that is, growing out of and incurred solely in the furtherance of the business engaged in. Business expenses are those incurred in producing, or in the expectation of producing, revenues to the business, as distinguished from expenses incurred for the convenience, comfort, or economy of the individual in pursuing his business. They are the expenses necessarily incurred in the performance of his business duties, and not those incurred by the individual for his personal comfort or convenience.

We do not so interpret the language used in the above quotation. In our opinion it and the conclusion there reached are contrary to petitioner's contention. We find nothing in the facts and circumstances here that would warrant a different conclusion.

These and other cases cited and relied upon by petitioner either sustain respondent's position in denying the claimed deduction, or, where the deduction claimed was allowed in whole or in part, are distinguishable.

Here, the parties have stipulated that the taxicab transportation was used exclusively in transporting petitioner to and from his place of residence and office. It has long been held that the expense of such transportation is a personal rather than a business expense and is nondeductible by reason of section 24 (a) (1) of the code. *Frank H. Sullivan, supra; Charles E. Cashman*, 9 T. C. 761. The expense in this case is necessitated by reason of the petitioner's physical condition, rather than by reason of his business. It is not deductible as a business expense.

*Decision will be entered for the respondent.*