Bernard Foster and Evelyn Foster v. Commissioner.
Foster v. Commissioner
Docket No. 13757.
United States Tax Court
1948 Tax Ct. Memo LEXIS 240; 7 T.C.M. (CCH) 119; T.C.M. (RIA) 48024; February 27, 1948
Evelyn Foster, pro se. George J. LeBlanc, Esq., for the respondent. HARLAN
Memorandum Findings of Fact and Opinion HARLAN, Judge: The Commissioner determined deficiencies in income tax in the years and amounts as follows: Year
Amount
1943
$147.43
1944
166.00
1945
140.00
Total
$453.43
The deficiency for 1943, because of the forgiveness features of the Current Tax Payment Act, requires a consideration of the income tax liability for 1942. During the years 1942, 1944 and 1945 Evelyn Foster and her husband, Bernard Foster, filed joint income tax returns. In 1943 Evelyn Foster filed *241 an individual income tax return. The deficiencies involved herein all pertain to the income of Evelyn Foster and petitioner Bernard Foster is involved only to the extent of his interest in the tax liability on the joint returns. Therefore, throughout this opinion Evelyn Foster will be referred to as the petitioner. Petitioner is a taxicab driver in the city of Baltimore and during the taxable years reported no amount received as tips. The question for consideration is as to whether or not the Commissioner erred by increasing the taxable income of petitioner so as to reflect therein an estimated amount of tips received by her during the taxable years. Findings of Fact The income tax returns involved herein were filed with the collector of internal revenue for the district of Maryland. In all the taxable years involved herein, except 1945, Mrs. Louise Hill, mother of petitioner, resided with petitioner. She died in 1944. From 1942 to 1945, inclusive, petitioner was employed as a chauffeur by the Sun Cab Company of Baltimore, Maryland, and operated a taxicab. She did not report during the taxable years the receipt of any amount as tips but during said years reported only the *242 income which she received from the taxicab company which represented forty per cent of the amount which she turned in to the cab company. The reported income from the Sun Cab Company; the income turned in to the cab company; together with the amounts added thereto by the Commissioner as an estimate of the tips received by the taxpayer are as follows: Income
Amount
Estimated
Year
Reported
Turned In
Tips
1942
$ 734.39
$1,836.00
$367.19
1943
1,409.16
3,522.90
704.58
1944
1,554.92
3,887.30
777.16
1945
1,455.17
3,637.93
727.59
The petitioner kept no record of her tips or of the amounts received by her when hauling extra passengers. She spent a portion of her time at home looking after her household duties and caring for her mother who was an invalid but petitioner kept no record of the amount of time she spent or of the number of days which she operated the taxicab. During the taxable years involved those Baltimore taxicab drivers who reported the receipt of tips, in addition to their commissions received from their employers, showed percentages of tips to the total taxicab revenue as follows: Average
percentage
Range of Percent-
of tips to
age of tips to
reported
reported taxicab
taxicab
revenue
revenue
Year
Low
High
all returns
1942
12%
23%
14.85%
1943
10%
31%
18.91%
1944
12%
24%
17.57%
1945
13%
21%
15.16%
*243 The Commissioner did not err by refusing to allow deduction from petitioner's income of amounts for the years 1942 to 1945, inclusive, constituting voluntary payment of tips, if there were any such payments, to the Sun Cab Company, petitioner's employer. Opinion The petitioner claims that during the taxable years herein involved she had three minor children of the respective ages of 14, 9 and 5 years in 1942 and that her mother who was an invalid also resided with her until 1944 when she died; that because of her family responsibilities it was necessary for her to devote part of the time that is ordinarily used by taxicab drivers to look after her household affairs and that in order to turn in an amount of income acceptable to her employers she included the tips which she received with her regular fares in reporting her income of daily receipts. She estimates that the average number of trips daily would amount to 26 or 28; that she turned in $15daily or $16; that of this amount every day $1.25 to $1.50 was for tips received; and that the average amount of each taxicab fare would be forty cents. The petitioner has kept no books showing either the amount of fares or tips received. *244 She has not furnished the Court with any testimony in any way questioning the testimony produced by the Commissioner to the effect that taxicab drivers reporting tips in Baltimore showed average receipts of 14.85 per cent of fares collected in 1942; 18.91 per cent in 1943; 17.57 per cent in 1944; and 15.16 per cent in 1945. The petitioner has testified that there was no minimum amount of receipts required of her by the taxicab company; that it was possible for her to operate a taxicab on a part-time basis; and that she did not inform her employer that a portion of the money she was accounting for constituted tips received by her. The petitioner has made two basic statements, the creditability of which is before this Court: (1 )that her tips amounted to but $1.25 to $1.50 a day; and (2) that she paid these tips over to her employer. As to the amount of her tips, the Court can gather little help from the mere statement of her estimated daily receipts as we do not know the number of days she worked per year. If she worked 300 days at $1.50 per day she would receive in tips $450; if 360 days per year, $540. Thus, even if we accept petitioner's daily estimate, we can only guess at the *245 annual income. Furthermore, we are convinced that petitioner, in relying only on her memory, has not been accurate in her estimate of tips. She says she averaged 26 to 28 trips per day of which an undisclosed number involved extra passenegers. Under such circumstances we cannot accept as credible her statement that she averaged but five cents a trip in tips. Therefore, because of our inability to compute the annual total of petitioner's tips from her own testimony and because of the questionable reliability of petitioner's memory, we are constrained to accept the Commissioner's estimate of the tips received by petitioner. That estimate is based upon the undisputed experience of taxicab drivers similarly situated with petitioner and petitioner has given us no reason as to why her tips should fall so much below the lowest reported amounts of tips received. Petitioner's second contention that she paid all her tips over to the taxicab company, even if accepted by this Court, would in no way authorize her to deduct those tips in her taxable income. Section 23, I.R.C., setting forth the allowable deductions from gross income, is quoted in the margin. [1]
*246 The borderline between allowable and unallowable deductions as ordinary and necessary expenses is not too well defined in the decisions, but in Henry C. Smith et al., 40 B.T.A. 1038, the Board of Tax Appeals had before it a case in which a husband and wife sought to deduct the expense of a nursemaid which the taxpayer contended was a necessary business expense so that the wife could earn her income where she was employed. The Board of Tax Appeals, however, in that case stated: "Petitioners would have us apply the 'but for' test. They propose that but for the nurses the wife could not leave her child; but for the freedom so secured she could not pursue her gainful labors; and but for them there would be no income and no tax. This thought evokes an array of interesting possibilities. The fee to the doctor, but for whose healing service the earner of the family income could not leave his sickbed; the cost of the laborer's raiment, for how can the world proceed about its business unclothed; the very home which gives us shelter and rest and the food which provides energy, might all by an extension of the same proposition be construed as necessary to the operation of business *247 and to the creation of income. Yet these are the very essence of those 'personal' expenses the deductibility of which is expressly denied. Revenue Act of 1936, section 24 (a). * * *
"* * * The line is not always an easy one to draw nor the test simple to apply. But we think its principle is clear. It may for practical purposes be said to constitute a distinction between those activities which, as a matter of common acceptance and universal experience, are 'ordinary' or usual as the direct accompaniment of business pursuits, on the one hand; and those which, though they may in some indirect and tenuous degree relate to the circumstances of a profitable occupation, are nevertheless personal in their nature, of a character applicable to human beings generally, and which exist on that plane regardless of the occupation, though not necessarily of the station in life, of the individuals concerned. See Welch v. Helvering, 290 U.S. 111." This Court in the recent case of John C. Bruton, 9 T.C. 882, had before it a case the facts of which presented a great appeal to the sympathy of this Court but nevertheless the facts did not bring the requested deductions *248 within the provisions of the Internal Revenue Code and therefore this Court denied the deductions as ordinary and necessary business expenses. In that case the taxpayer was a lawyer who, from a surgical operation on his brain, became partially paralyzed and was unable to use the ordinary public conveyances to ride to and from his office. He was compelled to patronize a taxicab on all occasions and sought to deduct the taxicab fare as ordinary and necessary business expense. The Court refused to sanction this deduction. It said: "The allowance of deductions from gross income does not turn on generally equitable considerations. It is a matter of legislative grace and only as there is clear provision therefor can any particular deduction be allowed." Decision will be entered for the respondent. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: (a) Expenses. - (1) Trade or Business Expenses. - (A) In General. - All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *. * * *. (2) Non-Trade or Non-Business Expenses. - In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.↩