JOSEPH LEWIS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 53981.    Filed October 31, 1956.

*Paul Arnold, Esq.,* and *Richard Z. Steinhaus, Esq.,* for the petitioner.

*John M. Doukas, Esq.,* for the respondent.

OPINION.

TIETJENS, *Judge:* Respondent has disallowed the deduction of the various expenses here in issue on the grounds that they all relate to petitioner's marital difficulties and are, therefore, nondeductible personal expenses. We must decide whether they are, as petitioner contends, deductible under section 23 (a) (2) of the 1939 Code [1] as "ordinary and necessary expenses paid or incurred * * * for the management, conservation, or maintenance of property held for the production of income."

The issue is whether the principal reason for incurring the expenses was for the protection of income-producing property. *Paul Draper*, 26 T. C. 201 (1956). If that was the main reason for the expenditures, the fact that the threat to such property came from an immediate member of the taxpayer's family does not preclude their deduction. *Estate of Frederick Cecil Bartholomew*, 4 T. C. 349 (1944).

Various expenses were incurred by petitioner in successfully defending himself against attempts by his wife, first, to have him declared insane, and then, after dropping that action, to have him declared an incompetent. He contends that his wife's primary motive in instituting these proceedings was to gain control of his property. Therefore, he argues, the legal fees, guardian fees, and medical expenses incurred in the defense of such proceedings are deductible under section 23 (a) (2). Certainly, petitioner had very substantial income-producing property to protect, for it produced dividends in excess of $50,000 during each of the years in issue. And when a taxpayer incurs expenses in resisting the attempt of members of his family to gain control of property held by him for the production of taxable income, it has been held that such expenses are deductible. *Estate of Frederick Cecil Bartholomew*, *supra*. However, respondent contends that though there was a desire on the part of petitioner's wife to secure control of his property, her primary purpose must be regarded as merely harassment. Petitioner's wife undoubtedly had mixed motives in instituting these proceedings against him, and it would be difficult to determine what was her dominant motive. But the crucial factor is petitioner's aim in contesting these proceedings. The problem in the instant case is similar to that in *Eugene E. Hinkle*, 47 B. T. A. 670 (1942), where the taxpayer sought to obtain deductions for legal expenses which he had incurred in a successful attempt

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.
In computing net income there shall be allowed as deductions:
(a) EXPENSES.—

\* \* \* \* \* \* \*

(2) NON-TRADE OR NON-BUSINESS EXPENSES.—In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income. or for the management, conservation, or maintenance of property held for the production of income.

to secure his release from a neuro-psychiatric institution to which he had been confined after having been declared incompetent. In that case we said that the taxpayer's purposes were "to obtain his freedom and gain control over his property." Here, they were to maintain his freedom and retain control over his property. As in that case, the taxpayer's foremost concern was with his personal liberty rather than the protection or control of his property and though the *Hinkle* case was decided before the enactment of section 23 (a) (2) we do not think, in view of the taxpayer's primary purpose, that the result here should be different. The cases relied upon by petitioner are distinguishable, for, in each, it was clear that the taxpayer's dominant motive was to protect his business. *Paul Draper, supra; Waldo Salt,* 18 T. C. 182 (1952); *Lindsay C. Howard,* 16 T. C. 157 (1951), affd. 202 F. 2d 28 (C. A. 9, 1953).

Petitioner appears to present an alternative argument on brief, namely, that the various expenses incurred by him in the insanity and incompetency proceedings must be allowed as ordinary and necessary business expenses under section 23 (a) (1) (A). He argues that an adjudication that he was insane or incompetent would have had an adverse effect on his reputation as a writer and on the sale of his recently published book on Thomas Paine, published in January 1947, and, thus, amounts spent by him in resisting such a result are to be treated as deductible business expenses. This argument must be denied because petitioner limited the issue to section 23 (a) (2), both in his petition and at the hearing, and, in addition, petitioner has not proved that the primary reason for incurring these expenses was to protect his business rather than to preserve his personal liberty. Cf. *Paul Draper, supra.*

Next, petitioner contends that he is entitled to deduct the legal fees which he paid in 1947 in connection with the revocation of an inter vivos trust which he had established for the benefit of his wife and others in 1931, reserving the right of revocation. In March 1947 he delivered an instrument to the trustee revoking the trust. At that time, the incompetency proceeding against him was still pending and it appears that questions arose as to his mental capacity to revoke the trust. The trustee filed an accounting and brought an action to have its account judicially settled. The court directed that the principal and income of the trust, aggregating over $200,000, be paid to petitioner. Under section 166 of the 1939 Code,[2] the income from

---

[2] SEC. 166. REVOCABLE TRUSTS.

Where at any time the power to revest in the grantor title to any part of the corpus of the trust is vested—

(1) in the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, or

(2) in any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, then the income of such part of the trust shall be included in computing the net income of the grantor.

this revocable trust was taxable to petitioner although he was not the beneficiary. In our view, the petitioner's action in revesting in himself the title to both the income and the corpus was motivated principally, if not solely, by the difficulty he was having with his wife. This was a personal or family purpose and the expenses incident to its accomplishment were personal. Furthermore, these expenses were concerned with securing title rather than with the management, conservation, or maintenance of property held for the production of income. Such expenses are of either a personal or a capital nature and as such are not deductible.

We also point out that the property of which the taxpayer was attempting to regain control was not at the time held for the production of income for himself, despite the fact it was taxable to him. In this respect we have held that expenses incurred in connection with such property are not deductible. In *Frederic A. Seidler*, 18 T. C. 256 (1952), we said:

Petitioner's final contention is that the expenditures were ordinary and necessary nontrade or nonbusiness expenses incurred for the management, conservation or maintenance of property held for the production of income under section 23 (a) (2), I. R. C. The statute, however, contemplates situations where the property is so held for the production of income for the taxpayer himself. Whatever income accrued in this case was payable, not to the petitioner but to the life beneficiary, to the extent of $75 per week, with the balance, if any, being added to the trust corpus. Since the property interest was not held by petitioner for the production of income for himself, petitioner must be denied deduction of the expenses incurred.

The third issue relates to the legal expenses which petitioner incurred in defending a suit for an accounting brought against him by his wife. In this action, petitioner's wife sought to establish that she was the joint owner, with petitioner, of various securities valued in excess of $450,000. She alleged that petitioner had removed such securities from a joint safe-deposit box and had also taken from this box United States Government bonds valued at $100,000 which she claimed were her sole property. She further claimed that she was the owner of 50 per cent of the stock of the Eugenics Publishing Co. and that petitioner had appropriated this stock and the dividends thereon to himself. This accounting action was discontinued when the parties resolved their problems in a settlement which was incorporated in a judgment of separation, dated November 15, 1948. Petitioner's primary purpose in defending this action was to protect his title to the various stocks and securities at issue. It is firmly established that expenses incurred in protecting title to property are not deductible but are capital in nature. *Bowers* v. *Lumpkin*, 140 F. 2d 927 (C. A. 4, 1944); *Agnes Pyne Coke*, 17 T. C. 403 (1951), affd. 201 F. 2d 742 (C. A. 5, 1953). Section 23 (a) (2) does not, as petitioner contends, permit the deduction of such expenses as nontrade or non-

business expenses. The situation in the accounting action defended by petitioner appears to be directly the opposite of that in *Rassenfoss* v. *Commissioner*, 158 F. 2d 764 (C. A. 7, 1946), cited by petitioner, where the court allowed the expenses to be deducted because, in that case, "the main and primary purpose of the suit * * * was for an accounting and any question of title was merely incidental thereto." See *Sergievsky* v. *McNamara*, 135 F. Supp. 233 (S. D., N. Y., 1955).

Insofar as this accounting action related to dividends which petitioner allegedly had appropriated to himself, rather than to title to the securities themselves, petitioner might have been entitled to a deduction under section 23 (a) (2) for legal expenses incurred for the "production or collection of income." See *William A. Falls*, 7 T. C. 66 (1946). However, there is no basis in this record for making an allocation of that portion of the legal expenses attributable to the dividends, and, in that situation, the rule of *Cohan* v. *Commissioner*, 39 F. 2d 540, is inapplicable. *Charles H. Hyslope*, 21 T. C. 131 (1953).

The last two issues involve the question of whether petitioner is entitled to deduct, under section 23 (a) (2), the various legal expenses which he and his wife incurred in connection with their separation proceedings. Petitioner and his wife were already separated at the time the action was instituted, and his attorneys' efforts were directed principally toward the form and amount of the alimony or maintenance provisions to be made for his wife and the adjustment of their respective property rights. Petitioner contends that, accordingly, his attorneys' fees are a deductible expense under section 23 (a) (2). We have held that legal expenses incurred by a husband in resisting financial demands made by his wife incident to divorce proceedings are nondeductible personal expenses rather than expenses paid or incurred for the management, conservation, or maintenance of property held for the production of income. *Arthur B. Baer*, 16 T. C. 1418 (1951), revd. 196 F. 2d 646 (C. A. 8, 1952). See *Thorne Donnelley*, 16 T. C. 1196 (1951) ; *Lindsay C. Howard, supra*. This position has been adhered to in *F. C. Bowers*, 25 T. C. 452 (1955), on appeal C. A. 6 (Feb. 17, 1956), and with due deference to the contrary opinion expressed in *George G. McMurtry*, 132 Ct. Cl. 418, 132 F. Supp. 114 (1955), we see no reason to depart from it now.

Petitioner also contends that he should be permitted to deduct the $10,000 legal fee incurred by his wife in connection with the incompetency proceedings, suit for an accounting, and separation proceeding, since, pursuant to the final settlement of such litigation, he was required to pay such expenses on her behalf. Petitioner cites *Elsie B. Gale*, 13 T. C. 661 (1949), affd. 191 F. 2d 79 (C. A. 2, 1951) ; and *Barbara B. LeMond*, 13 T. C. 670 (1949), but neither of these cases is in point since they relate to a wife's right to deduct legal expenses which she incurred in a successful effort to secure increased additions

of taxable income. Accordingly, respondent's disallowance of such deduction is sustained.

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

RICE, *J.*, dissenting: I disagree with the disallowance of the deduction of the legal expenses incurred by petitioner in connection with the revocation of the inter vivos trust of which he was the grantor. These were not personal expenditures even though petitioner's marital difficulties may have induced him to revoke the trust. The legal expenses which he incurred were not directly caused by the contest with his wife but, rather, by the trustee's doubt as to his ability to revoke the trust at that particular time, due to his possible mental incompetency. There was no question as to the revocability of this trust or as to petitioner's right to revest title in the property himself. This legal action was not the result of a dispute as to title of property, as the majority opinion would imply, but resulted from the trustee's concern as to petitioner's mental competence at the time of the revocation. The doctrine of the cases cited by the majority is somewhat harsh and I would not extend it to situations that can be distinguished.

BRUCE and FISHER, *JJ.*, agree with this dissent.

---

MULRONEY, *J.*, dissenting: I agree with the dissenting opinion of Judge Rice and I also disagree with the disallowance of expenses incurred by petitioner in successfully defending himself against attempts by his wife to have him declared an incompetent. The majority opinion states the rule of *Estate of Frederick Cecil Bartholomew*, 4 T. C. 349, is that a taxpayer's expenses incurred "in resisting the attempt of members of his family to gain control of property held by him for the production of taxable income," are deductible under section 23 (a) (2). It seems to me the application of this rule in the instant case would render the expenses incurred by the taxpayer in defending the incompetency action, deductible. In the wife's suit she prayed that she or a banking institution, or both, take over property which was admittedly held by him for the production of income.

I think *Eugene E. Hinkle*, 47 B. T. A. 670, cited in the majority opinion can be distinguished. There the property was not "held" by the taxpayer "for the production of income." It was actually held by a conservator and the suit was by the taxpayer to gain his freedom and the restoration of property order was, as the opinion points out, merely an incidental order that "naturally would follow from the court's determination that he was competent to handle his own affairs." It is also true the *Hinkle* case was decided under the rule of *Higgins* v. *Commissioner*, 312 U. S. 212, before section 23 (a) (2) was adopted.