J. W. Sefton Jr. v. Commissioner.
Sefton v. Commissioner
Docket No. 66562.
United States Tax Court
T.C. Memo 1959-234; 1959 Tax Ct. Memo LEXIS 13; 18 T.C.M. (CCH) 1121; T.C.M. (RIA) 59234; December 14, 1959
*13 1. Held, the Commissioner is sustained in his disallowance of $29,119.25 of the $30,320.73 interest claimed by petitioner as a deduction on his income tax return for the taxable year. The amount disallowed did not represent interest on indebtedness owed by petitioner within the meaning of section 23(b), I.R.C. 1939. 2. Held, the Commissioner is sustained in his disallowance of a deduction of $8,037.06 claimed by petitioner for legal fees and costs incurred by him in litigation with his wife from whom he was living separate and apart but was not divorced. The Commissioner has determined that the expenditures were of a personal nature and are not deductible under any provision of the Internal Revenue Code. John A. Brant, Esq., 1216 Bank of America Building, San Diego, Calif., for the petitioner. Cyrus A. Johnson, Esq., and Richard W. Janes, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The Commissioner has determined a deficiency in petitioner's income tax for the year 1953 of $14,214.19. The deficiency is due in part to two adjustments which the Commissioner made to the loss reported by petitioner on his return for 1953. These adjustments were: (a) Interest expense disallowed
$29,119.25
(b) Legal expense disallowed
8,037.06 These adjustments are described in the deficiency notice as follows: "(a) The sum of $30,320.73 deducted as an interest payment to Minna G. Sefton is disallowed to the extent of $29,119.25 because no such sum was paid as interest on an indebtedness as required by the provisions of Section 23(b) of the Internal Revenue Code of 1939. "(b) The deduction of $8,037.06 for legal fees and costs is disallowed *15 in full. It has been determined that these expenditures are of a personal nature and are not deductible under any provision of the3 Internal Revenue Code." The petitioner contests the correctness of the foregoing adjustments by appropriate assignments of error. Findings of Fact Most of the facts have been stipulated and the stipulation of facts, together with the exhibits attached thereto, is included herein by reference. J. W. Sefton, Jr., sometimes hereinafter referred to as the petitioner, resides in San Diego, California. His individual income tax return for the calendar year 1953 was filed with the district director of internal revenue, Los Angeles, California. Petitioner keeps his books and prepares his income tax returns on a calendar year basis and on a cash method of accounting. For sometime prior to 1930, petitioner had been an officer of the San Diego Trust & Savings Bank and has continued to be an officer in this bank and for some years has been its president. In petitioner's return for the calendar year 1953 he deducted the sum of $30,320.73 as "interest" paid to Minna Gombell Sefton, sometimes hereinafter referred to as petitioner's *16 wife or Minna. In petitioner's return for the calendar year 1953 he deducted the sum of $8,037.06 as legal fees and costs. This sum is made up of the following items: (a) Attorney's fees
$5,500.00
(b) Cost of partial transcript
95.00
(c) Cost of reporter's transcript
737.10
(d) Cost of clerk's transcript on
appeal
135.00
(e) Premium for undertaking on
appeal and to stay execution
1,569.96
Total
$8,037.06 These fees and costs paid by petitioner were reasonable and necessary fees and costs and were paid by him in connection with the action entitled "MINNA GOMBELL SEFTON, Plaintiff, v. J. W. SEFTON, Jr., and J. W. SEFTON FOUNDATION, a non-profit corporation." Petitioner and Minna were married May 19, 1933, and separated December 26, 1946. Ever since their separation they have lived separate and apart but they have not been divorced. On or about December 6, 1949, petitioner's wife served petitioner with a complaint entitled "Damages for Fraud; For Accounting by Trustee, etc." In this complaint, Minna alleged (a) that petitioner wrongfully and unlawfully, and for the purpose and with the intent of cheating and defrauding her and carrying out his plan to *17 use her money for his benefit induced her to allow him to manage and invest her funds and in reliance thereon she turned over various sums of money to him; (b) that petitioner was trustee for her and accountable to her as such trustee for all moneys, securities and property entrusted to him and all profits therefrom and each and every alleged act done by petitioner was done by him in violation of his duties and obligations as trustee for her; and (c) that the J. W. Sefton Foundation was the alter ego of petitioner and was used for the purpose of enabling him to conduct personal business in its name. In her complaint, Minna sought to recover the following sums of money: (1) Moneys allegedly belonging
to petitioner's wife and used by
petitioner to purchase property and
services for his own benefit
$ 7,892.55
(2) Moneys allegedly belonging
to petitioner's wife and used by
petitioner for his personal use
2,957.50
(3) Balance of funds borrowed
by petitioner from his wife
9,159.25
(4) Profits made by petitioner
through the use of funds belonging
to his wife
100,000.00
(5) Profits allegedly made by
petitioner on sale by him of stock
in San Diego Trust & Savings Bank
to his wife
2,405.00
(6) Dividends earned on 60
shares of stock of San Diego Trust
& Savings Bank allegedly owned
by petitioner's wife and trans-
ferred by petitioner to six other
persons
300.00
(7) Profits allegedly earned by
petitioner on the transfer referred
to in preceding subparagraph (6)
2,500.00
(8) Dividends received by peti-
tioner on shares of stock of Con-
tainer Corporation of America,
which shares were allegedly owned
by his wife
3,816.60
(9) Profits on sale of stock of
Point Loma Holding Company,
which stock allegedly was owned
by petitioner's wife
137,324.82
(10) Sums paid by petitioner's
wife for her support and mainte-
nance between May 19, 1933, and
December 26, 1946
42,694.85
(11) Interest on $2,400 allegedly
borrowed by petitioner from his
wife and repaid to her without in-
terest by petitioner
378.61
(12) Interest on moneys bor-
rowed from San Diego Trust &
Savings Bank on notes of petition-
er's wife, which interest was al-
legedly paid from funds belonging
to petitioner's wife
5,000.00
(13) Exemplary damages in the
sum of
100,000.00
Total
$415,329.18
*18 In her complaint petitioner's wife also sought to recover 214 shares of stock of Container Corporation of America of the alleged fair market value of $8,988 and 100 shares of stock of Western Investment Company of the alleged fair market value of $10,746. The complaint sought interest at the rate of 7 per cent of all sums which petitioner's wife sought to recover in the complaint, together with her costs of suit. On or about March 31, 1950, petitioner filed and served an answer and cross-complaint to the above-referred to action. Petitioner's answer and cross-complaint constituted a general denial of the allegations made in the complaint and prayed that petitioner's wife take nothing by her complaint and that petitioner instead recover the sum of $20,000 and 514 shares of the capital stock of the Container Corporation of America. The above-referred to action was tried in the Superior Court of San Diego County, California, between June 30, 1952, and November 25, 1952. On May 21, 1953, the court entered judgment in the proceedings as follows: "IT IS ORDERED, ADJUDGED AND DECREED as follows: "1. That plaintiff, Minna Gombell Sefton, do have and recover of and from the defendants, *19 J. W. Sefton, Jr. and J. W. Sefton Foundation, jointly and severally, the sum of $153,077.49, with interest thereon at the rate of seven per cent per annum from the date hereof; "2. That plaintiff, Minna Gombell Sefton, do have and recover of and from the defendant, J. W. Sefton, Jr., in addition to the amount hereinabove set forth, the sum of $19,015.40 and that there be off-set against said sum, in favor of said defendant, J. W. Sefton, Jr., the sum he is entitled to recover from her, namely, $11,819.64, leaving the net sum plaintiff is entitled to recover under this paragraph of this judgment, the sum of $7,195.76, with interest thereon at the rate of seven per cent per annum from the date hereon; "3. That plaintiff, Minna Gombell Sefton do have and recover of and from the defendant J. W. Sefton Foundation one hundred shares of the capital stock of Western Investment Company, a corporation, and said Foundation is hereby ordered to cause said shares to be transferred forthwith to plaintiff; "4. That plaintiff do have and recover from said defendants her costs herein expended, taxed at $321.45." On July 9, 1953, this judgment was reduced by the amount of $3,597.82 in accordance *20 with an order of the Superior Court. On July 13, 1953, petitioner filed a notice of appeal and request for reporter's and clerk's transcripts. On July 24, 1953, petitioner's wife filed a notice of appeal from portion of judgment and request for clerk's transcript. Sometime shortly prior to September 11, 1953, the attorney for petitioner's wife was contacted by the attorney for petitioner and told that if he would come to San Diego there was a possibility of effecting a compromise of the aforementioned litigation. Pursuant to the conference between the attorneys for petitioner and petitioner's wife, a memorandum dated September 11, 1953, was sent from the attorney for the plaintiff to the attorney for the defendant, stating that a settlement could be reached for the total sum of $142,500 - "provided the same is allotted by memorandum agreement as being paid on account of the following: "Account of capital gain on
sale of Point Loma Hold-
ing Company stock
$120,114.27
Account of cost of boat repair
taken from Mrs. Sefton's
account
399.13
Account of dividends on San
Diego Bank stock
300.00
Refund on account of her liv-
ing expenses (our cross-
appeal)
14,000.67
Account of costs of suit
611.45
Account of dividends on West-
ern Investment Company
stock (amount received by
Mr. Sefton and Foundation,
$11,746.00)
5,873.00
Balance being interest
1,201.48
*21 "and further provided that the 100 shares of stock of Western Investment Company be endorsed and transferred to Mrs. Sefton and, if any dividends have been paid within the last year, same shall be turned over to her, "and provided all other claims of the parties (except as to furniture), including all claims of Mr. Sefton for overpayment into her bank account, tax refund and interest, and all her claims for interest against him, are waived. "If settled on this basis, appeals will be dismissed and a mutually executed satisfaction of judgment shall be filed." After a conference between the attorneys for both sides a settlement agreement was reached. Petitioner did not personally participate in the conference between the attorneys but he fully authorized his attorney to enter into a compromise agreement and, when the compromise agreement was reached, he signed it in his individual capacity and also signed it as president of the J. W. Sefton Foundation. The compromise agreement was also signed by Minna Gombell Sefton, petitioner's wife. This compromise settlement agreement, dated September 17, 1953, provided as follows: "J. W. SEFTON, Jr., and J. W. SEFTON FOUNDATION, a nonprofit *22 corporation, hereinafter designated as first parties, and MINNA GOMBELL SEFTON, hereinafter designated second party, hereby mutually settle and terminate all litigation and claims which they have against each other (except as to furniture) as follows: "First parties (amounts below specified being divided between them as they determine) herewith pay over to second party the following specified sums and stock in full settlement of her described claims, to-wit: "$120,114.27 in full settlement of the gain made on sale of stock of Point Loma Holding Company owned by second party and sold by first parties; "$399.13 in repayment to second party of sum paid from her bank account for repairs to boat; "$300.00 in full settlement of dividends paid by San Diego Trust and Savings Bank on stock of said Bank owned by her while same was out of her possession; "$5,873.00 in full settlement of claims made by her for dividends paid on stock of Western Investment Company, claimed by second party, while said stock was held by first parties; "$1,201.48 as interest due second party; "$611.45 in repayment to her of costs of suit; "$14,000.67 in repayment to second party of sums expended by *23 her for her living expenses; "Certificate for 100 shares of stock of Western Investment Company, duly endorsed to her for transfer by said Company; "Second party hereby acknowledges receipt of the above described sums and said stock and hereby waives all other claims which she has or claims to have against said first parties, and each of them, for and on account of each and every transaction between them to the date hereof, except claims to certain furniture and costs of suit regarding furniture; "First parties, jointly and severally, hereby waive all claims of every kind and nature which they have or claim to have against second party for and on account of all transactions to the date hereof. "All parties hereto hereby authorize their attorneys in action No. 156,335, Superior Court of the State of California, in and for the County of San Diego, to dismiss appeals taken in said action and to file satisfaction of the judgment entered therein without other or additional consideration than above specified." On or about September 28, 1953, petitioner delivered to his wife a cashier's check dated September 28, 1953, in the amount of $142,500, together with a certificate for 100 *24 shares of stock of Western Investment Company in compliance with the settlement agreement. On September 29, 1953, a full satisfaction of judgment was entered in the litigation. On September 29, 1953, petitioner and Minna filed an abandonment of appeals in the litigation. Opinion BLACK, Judge: There are two issues in this proceeding: (1) In his income tax return petitioner deducted for interest paid his wife the sum of $30,320.73. The Commissioner, in his determination of the deficiency, disallowed $29,119.25 of the foregoing amount and only allowed $1,201.48 of it as a deduction. Petitioner contests respondent's adjustment in this respect as error. This presents the first issue we have to decide. (2) In his return for 1953, petitioner deducted $8,037.06 as attorney's fees and other legal expenses incurred and paid by him in connection with the lawsuit which has been described in our Findings of Fact. The Commissioner denied this claimed deduction in its entirety on the ground that it was a personal expense and not deductible under any provision of the Internal Revenue Code. Petitioner assigns error as to this action of respondent and thus we are presented with the second issue *25 in the proceeding. We shall now take up the respective issues and decide them. Issue 1 In arguing this issue, petitioner says that the payment by him of $142,500 to his wife was in settlement of the particular items comprising the judgment of the aggregate amount of $157,286.88. The items which made up this aggregate amount of the money part of the judgment are set forth in our Findings of Fact. Petitioner further contends that the $14,786.88 reduction effectuated by the settlement payment of $142,500 should be allocated to principal and interest on a proportionate basis. Petitioner further contends that of the settlement sum, 22.525 per cent should be apportioned to interest and 77.475 per cent to principal. Respondent's argument on this Issue 1 is in substance that the item by item compromise agreement which was finally agreed upon was thoroughly explored and discussed by both sides and constituted a valid and legally binding agreement and that petitioner has failed to show any reasons for setting aside this compromise agreement and he is bound by its terms and therefore only paid, and is limited to, an interest deduction of $1,201.48. We agree with respondent's view. *26 If we had nothing before us except the compromise settlement for $142,500 of a judgment against petitioner for $156,675.43, we think there would be merit to petitioner's contention. But there is much more to the compromise agreement than that. For example, petitioner's wife, in her complaint, sought to recover $100,000 exemplary damages, $42,694.85 living expenses, $5,378.61 interest on specific funds, and $20,009.30 of moneys allegedly owed to her, or a total of $168,082.76. Petitioner's defense against these general claims was successful. He reduced her general demands from $168,082.76 to $4,833.17, the amount the court found to be due petitioner's wife as interest on specific funds. It must be remembered that not only had petitioner given notice of appeal from the judgment against him for $156,675.43, but his wife had also given notice of appeal from the judgment of the court which had denied her the recovery of very substantial amounts named above which she had alleged in her complaint she was entitled to recover from petitioner. Therefore, it is plain that the respective appeals not only put in issue the judgment against petitioner for $156,675.43, but also put in issue the *27 very substantial amounts which petitioner's wife had asked for in her complaint and which the judgment of the court had denied her and for which, in her appeal, she was contending substantial amount should be paid her. All of these things were settled in the compromise agreement which was signed by all the parties to the litigation. Upon the signing of the agreement, the appeals which both parties had taken from the judgment of the court were dismissed and the litigation was at an end. Petitioner concedes, as indeed he must, that in the compromise agreement which he signed it is stated: "$1,201.48 as interest due second party," but he argues that agreements may be set aside where it is shown that they were entered into because of fraud, accident, or mistake and he cites authorities to that effect. But we see no reason to discuss these authorities. In the instant case, petitioner has not shown that the agreement was entered into because of fraud, accident, or mistake. Petitioner testified at the hearing and the upshot of his testimony was to the effect that he fully authorized his attorney to enter into the compromise agreement but that he himself was not consulted by his attorney *28 as to the details of the settlement. He also testified that he voluntarily signed the settlement agreement after it had been drawn up by the attorneys for both sides. Such testimony, it is clear, does not show in the slightest degree that the agreement was entered into through fraud, accident, or mistake. We hold that petitioner is fully bound by the terms of the agreement. Respondent is sustained as to Issue 1. Issue 2 The parties are not in dispute as to the amounts which petitioner paid in fees and costs in connection with the lawsuit between himself and his wife. Also, the parties have stipulated that, "These fees and costs paid by Petitioner were reasonable and necessary fees and costs paid by him in connection with the action brought by Petitioner's wife against him * * *." The Commissioner has disallowed the deduction of these fees, however, on the ground that they were personal expenses and not deductible under any provision of the Internal Revenue Code of 1939 which is applicable to the year which we have before us. Petitioner contends that the expenditures in question are deductible in their entirety under the provisions of section 23(a)(2), 1939 Code, printed *29 in the margin. [1]
We think the Commissioner should be sustained in his disallowance of the attorney fees and other litigation expenses which aggregated $8,037.06. We agree with the explanation given by the Commissioner in his deficiency notice wherein he says, "these expenditures are of a personal nature and are not deductible under any provision of the Internal Revenue Code." Cf. Joseph Lewis, 27 T.C. 158. In the Lewis case, the taxpayer paid fees of psychiatrists, special guardian, and attorneys in defending suits instituted by his wife to have him declared insane and an incompetent; fees for his attorneys' services in connection with the revocation of a trust, in defending a suit for an accounting brought by his wife, and in connection *30 with separation proceedings instituted by his wife; and legal expenses incurred by his wife which he paid pursuant to the agreement settling their controversies. We held, in the Lewis case, that the above-named expenditures made by the husband-taxpayer were not deductible under section 23(a)(2), 1939 Code. It is true, of course, that there are differences in the facts in the Lewis case from the facts present in the instant case. We think, however, that the facts in the instant case bring it within the ambit of the Lewis case and that the litigation expenses sought to be deducted by petitioner here under section 23(a)(2), 1939 Code, must be denied. We sustain the Commissioner as to Issue 2. The petitioner relies strongly on Harold K. Hockschild, 7 T.C. 81. In that case this Court held that a portion of the attorneys' fees involved therein was expended in defense of title, was a capital expenditure and was not deductible as an ordinary and necessary expense, but the remaining portion was allocable to the defense against the claim to interim dividends and was deductible as an expenditure connected with the collection of income. The Court of Appeals for the Second Circuit *31 reversed the Tax Court, 161 F. 2d 817, and held that the entire expenditure was deductible as an ordinary and necessary expense of the business of the taxpayer in acting as a director and officer of a corporation. We have no such facts in the instant proceeding. The instant case was a litigation between husband and wife where various differences between them were being litigated and, as we have already said, falls within the ambit of Joseph Lewis, supra. We think the Hochschild case, supra, so strongly urged by petitioner is distinguishable on its facts. Decision will be entered for the respondent. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: (a) Expenses. - * * *
(2) Non-trade or non-business expenses. - In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.↩