LEONARD A. FARRIS AND KATHERINE FARRIS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 37691. Filed April 23, 1954.

*Carl T. Smith, Esq.*, for the petitioners.
*Mark Townsend, Esq.*, for the respondent.

OPINION.

JOHNSON, *Judge:* Respondent determined a deficiency of $3,705.22 in petitioners' income tax for 1948. The following issues are presented:

(1) Did the Commissioner err in disallowing $13,085.66 of the $13,678.40 claimed as ordinary and necessary expense of the partnership (Royer-Farris Drilling Company), and allocating the sum disallowed as an offset to the sale price of capital assets in determining the capital gains of the partnership?

(2) Did petitioners receive $12,500 in taxable income in connection with the liquidation of the Royer-Farris Drilling Company?

Petitioners alleged error in respondent's adjustment of the standard deduction, but on brief they withdrew their allegation of error.

All of the facts were stipulated and are incorporated herein by this reference.

Leonard A. Farris and Katherine Farris, husband and wife, are residents of Wichita, Kansas. They filed their joint return for the calendar year 1948 on a cash receipts and disbursements basis with the collector of internal revenue for the district of Kansas. Leonard A. Farris will hereinafter be referred to as petitioner.

Petitioner, Roy H. Johnston, and H. H. Royer entered into a partnership agreement which, in part, is as follows:

THIS AGREEMENT Made and entered into this, the 1st day of December, 1943, by and between ROY H. JOHNSTON, of 609–10 Equitable Building, Hollywood, California, hereinafter for convenience designated as "JOHNSTON", Party of the First Part, and H. H. ROYER and L. A. FARRIS, both of Wichita, Kansas, Parties of the Second Part.

\*  \*  \*  \*  \*  \*  \*

NOW, THEREFORE, In consideration of the premises and of the terms, conditions and provisions hereinafter contained, the parties to this agreement do contract to and with each other as follows:

1. JOHNSTON shall furnish the sum of $50,000.00 to be used in the acquisition and development of oil and gas mining properties in the Mid-Continent field, under the sole and direct supervision of ROYER and FARRIS.

$30,000.00 of said sum shall be made available immediately and $20,000.00 shall be made available on or before February 1, 1944.

2. ROYER and FARRIS, for the duration of this contract, shall devote such of their time and attention as is necessary and advisable to the acquisition and

development of oil properties to be secured for the joint adventure, it being the sense of this agreement that the properties to be acquired shall be in the main drilling deals and farm-out deals for contemplated drilling.

3. ROYER and FARRIS shall conduct the joint adventure under the name of ROYER-FARRIS DRILLING COMPANY, and all properties shall be taken in that name, to be held for the benefit of the joint account. ROYER and FARRIS shall be the sole judges of what deals are taken for the account.

4. This agreement shall continue in force and effect for a period of two (2) years from the date hereof, and may be renewed at the end of such period for such time or periods as the parties mutually agree.

5. Second Parties shall keep an accurate set of records, showing all receipts and disbursements, together with a list of all properties acquired, which records at all times shall be open to inspection by First Party, or his agents. Such records shall be kept and maintained by Second Parties at their office in Wichita, Kansas.

6. At the termination of the two-year period, the profits of the venture shall be divided on the basis of an undivided one-half (½) to JOHNSTON, an undivided one-fourth (¼) to ROYER, and an undivided one-fourth (¼) to FARRIS.

Net profits shall be defined as the gross income remaining after deducting therefrom all operating expenses, all taxes, maintenance, insurance and other charges constituting operating expense, in accordance with accepted practices and principles of accounting, and including also any necessary salaries paid.

7. It is the specific understanding and agreement of the parties that ROYER and FARRIS have other interests and shall not be bound to give their entire time to this venture, but shall give it such time and attention as is necessary for the proper conduct of the same.

8. Inasmuch as the covenants of this contract are personal insofar as ROYER and FARRIS are concerned, their respective interests shall not be assignable, except by written consent of First Party.

This agreement was in force and effect on July 16, 1947.

The partnership acquired 2 trucks, office equipment, an oil well drilling rig, and interest in oil properties. Operation of the partnership resulted in losses for the years 1944, 1945, and 1947, but there was a modest operating profit for the year 1946. In the partnership's Federal income tax returns for these years the profits and losses were divided according to the partnership agreement, and petitioner on his individual income tax return reported his share of these profits and losses.

On July 16, 1947, Royer died. He was a resident of Kansas, and under State law petitioner, as surviving partner, was appointed administrator of the partnership estate on September 3, 1947, by the Probate Court of Sedgwick County, Kansas. His petition requesting his appointment as such administrator alleged that the partnership was composed of Royer, Johnston, and himself and that Royer was the owner of an undivided one-fourth interest in all of the assets, properties, debts, and liabilities of the partnership. During the administration of the partnership estate all partnership assets were converted into cash, and all liabilities were discharged. At a hearing on

August 20, 1948, the Probate Court approved the final account of the administrator of the partnership estate. The Probate Court entered its order of distribution which is, in part, as follows:

Said cause then proceeded on to be heard, the parties appearing as aforesaid, and testimony was duly introduced in connection with the services rendered the estate and the accounting of the Administrator.

The Court being fully advised in the premises finds that the accounting of the Administrator attached as Exhibit A to his petition for discharge herein be and it is correct, settled and allowed and the Court approves said account as complete and accurate.

The Court further finds that the partnership owns no real estate and that the only persons entitled to the proceeds left in the Administrator's hands, after payment of costs, fees and compensation, are as follows, to-wit:

L. A. Farris_____ ¼th
Inez M. Royer, Executrix of the last will and testament of
  H. H. Royer, also known as Horace Haldean Royer, deceased_ ¼th
Roy H. Johnston_____ ½

The court then ordered that the proceeds remaining in the administrator's hands be distributed; the amount available for distribution was $24,190.14. From this distribution petitioner received $6,047.54 in cash in 1948. Other than the administrator's fee this $6,047.54 was the only cash received by the petitioner from the partnership in 1948.

The Probate Court's order of August 20, 1948, also authorized and directed the administrator to pay certain administration expenses of the partnership estate. These expenses amounted to $13,000, and for this amount the court found:

(1) That petitioner "rendered services as Administrator herein for which he shall be allowed a fee" of $3,000; (2) that the surviving partner Johnston "has rendered services herein of the reasonable value" of $1,000; (3) that an attorney "for the partnership estate, has rendered services herein of the reasonable value" of $5,000; and (4) that attorneys for Johnston "have rendered services herein of the reasonable value" of $4,000.

On November 16, 1948, petitioner was discharged as administrator of the partnership estate and the sureties on his bond were released from further liability.

The only net worth account on the partnership books was denominated "Partners Capital." This account did not contain any debit or credit entries for the individual partners. It contained opening credit entries aggregating $50,000 without designating the origin of the money. Debit and credit entries were made during the years 1943 to 1947, but no entries were made for the individual partners. The following table shows a summary of respondent's reconstruction of the capital accounts:

| | CAPITAL ACCOUNTS | | | | | | | |
| | Tota | | Johnston | | Petitioner | | Royer | |
| | Debit | Credit | Debit | Credit | Debit | Credit | Debit | Credit |
| Original capital | ---------- | $50,000.00 | ---------- | $50,000.00 | ---------- | ---------- | ---------- | ---------- |
| Aggregate debits and credits from Dec. 1, 1943 to Dec. 31, 1948 | $68,417.27 | 42,607.41 | $34,208.65 | 21,303.71 | $17,104.30 | $10,651.84 | $17,104.32 | $10,651.86 |
| Totals | $68,417.27 | $92,607.41 | $34,208.65 | $71,303.71 | $17,104.30 | $10,651.84 | $17,104.32 | $10,651.86 |
| Transfer of capital for services | ---------- | ---------- | ---------- | 25,000.00 | ---------- | ---------- | 12,500.00 | ---------- | 12,500.00 |
| Cash settlement per court order | 24,190.14 | ---------- | 12,095.06 | ---------- | 6,047.54 | ---------- | 6,047.54 | ---------- |
| | $92,607.41 | $92,607.41 | $71,303.71 | $71,303.71 | $23,151.84 | $23,151.84 | $23,151.86 | $23,151.86 |

In computing petitioner's deficiency respondent analyzed the partnership books and determined that the capital account of petitioner should have reflected a debit balance of $6,452.46 and the capital account of Johnston should have reflected a credit balance of $37,095.06. This analysis was applicable to the account just prior to the cash settlement.

By October 31, 1948, the partnership received from the sale of its capital assets the amount of $73,628.48 (real property $30,150; personal property $43,478.48), and ordinary income in the amount of $3,336.94. In the same period the partnership classified as "Partnership Estate Expense" the amount of $13,678.40; this included the $13,000 which was allowed in the order of the Probate Court. The amount of $13,678.40 was claimed as a deduction from ordinary income on the partnership return for the period ended October 31, 1948. That return reported ordinary losses of $23,907.25, and $15,104.27 as one-half of the net capital gains; respondent adjusted this return so that the resulting net losses were $10,853.21 and the capital gains $16,822.46.

Petitioner reported on his individual return 25 per cent of the operating loss as stated in the partnership return and 25 per cent of the capital gain. Two of respondent's adjustments to petitioner's 1948 income tax return are as follows:

(2) It is held that $13,085.66 of the item shown on the return filed as partnership estate expense is properly chargeable to the expense of selling properties during the year.

\* \* \* \* \* \* \*

(4) It is held that the amount of $12,500.00 credited to your capital account and charged to another joint venturer in the settlement of the partnership estate is income taxable to you.

The first issue is whether the Commissioner erred in disallowing $13,085.66 of the $13,678.40 claimed as ordinary and necessary expense of the partnership, and allocating the sum disallowed as an offset to

the sale price of capital assets in determining the capital gains of the partnership.

Respondent on brief, in support of this disallowance and allocation, cites I. T. 2305, V-2 C. B. 108, to the effect that in the sale of real estate by persons not regularly engaged in that business "commissions paid, while they do not reduce or otherwise affect the amount of the selling price, may be offset against the selling price in determining the amount of gain or loss realized from such sales, * * *."

He then cites *Irma Jones Hunt*, 47 B. T. A. 829, where it was held that a taxpayer not engaged in the real estate business could not deduct as an ordinary and necessary expense "commissions paid" to real estate broker for making sale of her interest, but that the amount of such commissions constituted an offset to the sale price of the property in computing petitioner's capital gain from the transaction.

In the instant case there is no evidence that "commissions" in any amount were paid for sale of the partnership property, or any part thereof. The items comprising the claimed expenditures in the tax return were as follows:

| | |
|---|---:|
| Additional clerical service | $250. 00 |
| Attorney fees | [1] 9, 250. 00 |
| Estate fees (Administrator's fees) | [1] 4, 000. 00 |
| Probate judge fees | 125. 20 |
| Other court costs | 53. 20 |
| | $13, 678. 40 |

[1] A breakdown of the items comprising these amounts heretofore appears in our recital of the Probate Court's approval of same.

In the absence of evidence that "commissions" were paid or that the expenses in question were directly connected with the sale of property, respondent on brief points out that a major portion of the partnership gross receipts in 1948 was from the sale of capital assets and hence avers, "it would follow that the principal duties of the attorneys and administrators consisted of facilitating and consummating these sales."

Upon this premise respondent argues that since the partnership estate was administered in the Probate Court primarily for the liquidation of the partnership, expenditures incurred therein, including fees paid the administrator for services rendered, attorneys' fees, etc., are "expenses incident to the sale of property" and hence are capital expenditures and are nondeductible. He cites no authority so holding, and we doubt if any court has so held.

While liquidation is the ultimate goal of an administration, it is a matter of common knowledge that during its pendency the management, operation, and conservation of the business must be carried on, and compensations for such services are not expenses incident to the sale of property.

The Commissioner's disallowance of the deduction was arbitrarily based upon the sources of the partnership gross income. For that percentage of the income received from the sale of oil, the deduction was allowed, but since the balance of the income was from the sale of capital assets, it was disallowed. On brief he admits that in arriving at the amount of expenses disallowed, he "allocated the deduction between ordinary and necessary expenses and expenses incurred in the sale of capital assets in the same proportion as the reported gross receipts from oil sales in 1948 bear to the reported gross receipts from the sale of capital assets in such year." This is in conflict with respondent's regulations.

We quote from Regulations 111, section 29.23 (a)–15:

It is immaterial whether the expenses of fiduciaries are paid from the corpus of the estate or from income. Expenses derive their character not from the fund from which they are paid, but from the purposes for which they are incurred.

Section 162 of the Internal Revenue Code provides that "The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual."

As to individuals, section 23 (a) (2) of the Code allows a deduction, viz:

(2) NON-TRADE OR NON-BUSINESS EXPENSES.—In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.

Section 29.23 (a)–15 of Regulations 111 provides in part as follows:

Reasonable amounts paid or incurred by the fiduciary of an estate or trust on account of administration expenses, including fiduciaries' fees and expenses of litigation, which are ordinary and necessary in connection with the performance of the duties of administration are deductible under this section, notwithstanding that the estate or trust is not engaged in a trade or business, * * *

Respondent contends that the expenses in question were not "paid or incurred for the production or collection of income nor for the management, conservation or maintenance of property held for the production of income." He predicates this upon his averment that "expenses paid or incurred in the sale of capital assets" are not deductible. He refuses to recognize that these expenses were not incurred in the *sale* of assets, but in the *administration* of an estate, which the record here clearly shows. "Administration expenses, including fiduciary fees," etc., under the Commissioner's regulations last above cited are deductible.

In *Bingham's Trust* v. *Commissioner*, 325 U. S. 365, the Commissioner sought to give a narrow and restrictive interpretation of the

terms, "for the production or collection of income, or for the management, conservation or maintenance of property held for the production of income," which the Supreme Court rejected after a thorough discussion of the question, and affirmed our allowance of these deductions in *Mary Lily Bingham Trust*, 2 T. C. 853, and which the Court of Appeals for the Second Circuit had reversed, 145 F. 2d 568. The expenses here in question were clearly incurred in the "management" of income producing property within the meaning of that term as defined and applied by the Supreme Court in the *Bingham's Trust* case, *supra*.

Petitioners cite *James H. Knox Trust*, 4 T. C. 258, where we held that fees paid trustees out of the corpora of the trusts in accordance with New York law were deductible from the gross income of the trusts under section 23 (a) (2) of the Internal Revenue Code. Cf. *Harry Civiletti*, 3 T. C. 1274, affd. 152 F. 2d 332, certiorari denied 327 U. S. 864.

The expenses in question were paid by the administrator of the partnership estate pursuant to a decree of the Probate Court having jurisdiction thereof,[1] after the court had heard evidence thereon and affirmatively found that the amounts were reasonable and that same were "for services rendered" therein.

The Probate Court of Sedgwick County, Kansas, is a court of record and its records import absolute verity, and in the absence of evidence contrary to its findings, we must accept same as true. *Goodwin's Estate* v. *Commissioner*, (C. A. 6) 201 F. 2d 576.

We hold that the partnership expenses in question were deductible under section 23 (a) (2) of the Internal Revenue Code, and the Commissioner's disallowance of same is reversed.

A brief review of the facts for the second issue will give a better understanding of respondent's basis for the deficiency determination. R. H. Johnston contributed the original capital to the partnership. Petitioner and H. H. Royer contributed knowledge, experience, and services. Johnston was entitled to one-half of the profits or losses; the other partners one-fourth each. Only one capital account was kept on the partnership books; there was no separate account for any of the partners. However, respondent reconstructed the individual capital accounts for the partners and from the reconstruction determined, for 1948 prior to the liquidation settlement, that petitioner's account should have a debit balance of $6,452.46. Notwithstanding this debit balance, petitioner received on liquidation a cash settlement of

---

[1] The laws of Kansas (Kan. Gen. Stat. 1935, 1947 Supp., sec. 59–1005) relating to partnership estates provide that the administrator has "the same duty to account and to have his account adjudicated as in the case of ordinary administration." Also, section 59–1717 provides for compensation for services of administrator and his attorneys upon application and approval by the Probate Court.

$6,047.54. Now respondent contends that the $6,047.54 cash settlement plus the elimination of the $6,452.46 debit balance amounted to $12,500 of taxable income to petitioner in 1948.

Respondent used 3 theories to support his determination. First, he contends that petitioner received $12,500 in 1948 as a result of a transfer of that amount to petitioner's capital account from the capital account of the only partner who contributed initial capital to the partnership. Second, petitioner received taxable income as a result of the cancellation of his debit balances. Third, taxable income results to petitioner because he benefited from loss deductions in prior years.

Opposing respondent, petitioner contends that he did not actually or constructively receive $12,500 as income in 1948. Petitioner suggests that if he did receive $12,500, it was received in an earlier year, 1943 or 1944, when the original capital was contributed to the partnership; therefore, if he received anything in 1948 it was a return of capital and not taxable in that year.

The contentions and allegations of the parties are often helpful in arriving at a solution to one of these problems. However, where the problem springs from a written agreement it is wise to first look to the agreement itself for the solution. An analysis of the partnership agreement shows that one of the partners was to contribute $50,000, but the agreement is silent as to the distribution of this $50,000 to the partners' capital accounts. Without any indication of a gift, sale, or transfer, it is only reasonable to conclude that the $50,000 originally remained in the account of the contributing partner. The mere fact that the agreement provided for a certain sharing of the profits and losses does not prove that the initial capital contribution was to be shared in the same ratio as profits and losses.

Next, if the $50,000 was not distributed when the partnership was formed, we must look at the record to see if it was ever distributed among the partners, and we see that it was. In 1948 petitioner received one-fourth of the aggregate balance remaining on the partnership capital account. He received $6,047.54 in cash, and in addition a personal debit balance of $6,452.46 was eliminated. The total of these 2 amounts is $12,500, or one-fourth of the original cash contribution. This sum of $12,500 was not a distribution of partnership income; income had already been distributed. It was, however, a distribution of Johnston's original capital contribution. Petitioner's gain was $12,500 in 1948, but now the question is whether that was taxable income.

In *Harry W. Lehman*, 19 T. C. 659, a similar case, the question was put "whether petitioners realized taxable income by virtue of the $10,000 increase in their capital accounts by reason of transfers from their partners." It was held that they did. The facts in the *Lehman*

case are not identical to these before us, but they are sufficiently similar so that the rule established there must be considered here.

In the *Lehman* case the transfer was only a bookkeeping entry, that is, no cash was transferred. In the present case a portion of the $12,500 was paid in cash. In both cases the funds were transferred from one partner's capital account to another's account. In the *Lehman* case the books disclosed the transfer, in the present case it was necessary for the respondent to reconstruct the accounts. While the basic facts are somewhat different, we believe that the rule established in the *Lehman* case is sound, and a like decision should be obtained here. Therefore, we find that the $12,500 was taxable income to petitioner in 1948.

It should be pointed out that petitioner does not actually contest the receipt of $12,500, but rather maintains it was received in a year other than 1948. The evidence does not permit such a finding. Similarly, petitioner's argument that the $12,500 was a return of capital is without merit. There is no showing that petitioner contributed capital, or that he purchased, or was given, a share of Johnston's original contribution in any year other than 1948. It is unnecessary to discuss respondent's alternative arguments. On this second issue respondent must be sustained.

*Decision will be entered under Rule 50.*