HERMAN A. MOORE TRUST, NORTH CAROLINA NATIONAL BANK, TRUSTEE, U/W, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6785–65. Filed January 25, 1968.

*William K. Van Allen*, for the petitioner.
*Charles B. Sklar*, for the respondent.

432

OPINION

The first issue for decision in this case is whether attorneys' fees incurred by petitioner in connection with certain litigation are deductible expenses for the management, conservation, or maintenance of property held for the production of income, or whether the amounts were capital expenditures incurred in defending or perfecting title to property.

The facts giving rise to this case, briefly stated, are as follows: Petitioner is the Herman A. Moore Trust created pursuant to the will of Herman A. Moore. Under this will the trustee of petitioner was directed to pay a portion of the trust income to the testator's widow during her lifetime and to accumulate the balance. Upon the death of the testator's widow, the trustee was to divide the principal of the trust into equal shares to be held in special trusts for the benefit of the children of the deceased when living or their issue. Twelve years after the establishment of the trust, the testator's widow renounced her interest in a portion of the trust assets. The action in which the court costs involved in this litigation were incurred was brought by the testator's two children, in which they unsuccessfully contended that the release and renunciation of the widow acted to

accelerate their beneficial remainder interest in the renounced property, and that the trustee should hold that property and administer the trusts as if the widow had died.

On these facts, petitioner contends that the legal fees it paid in connection with its defense of the above suit are deductible expenses relying on section 212(2) which provides that—

there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—

*     *     *     *     *     *     *

(2) for the management, conservation, or maintenance of property held for the production of income * * *

and on section 1.212–1(i), Income Tax Regs., which provides that—

(i) Reasonable amounts paid or incurred by the fiduciary of an estate or trust on account of administration expenses, including fiduciaries' fees and expenses of litigation, which are ordinary and necessary in connection with the performance of the duties of administration are deductible under section 212 * * *

Respondent, on the other hand, argues that the legal fees are nondeductible, relying on section 1.212–1(n), Income Tax Regs., "Capital expenditures are not allowable as nontrade or nonbusiness expenses," and on section 1.212–1(k), Income Tax Regs.—

(k) Expenses paid or incurred in defending or perfecting title to property * * * constitute a part of the cost of the property [i.e., a capital expenditure] and are not deductible expenses. * * *

Before embarking on an analysis of the "defense of title" contention, it is noted that as the Supreme Court stated in *Trust of Bingham* v. *Commissioner*, 325 U.S. 365 (1945):

Section 23(a)(2) [of the 1939 Code, now sec. 212 of the 1954 Code] is comparable and *in pari materia* with section 23(a)(1) [of the 1939 Code, now sec. 162 of the 1954 Code] authorizing the deduction of business or trade expenses. * * *

Thus, defense-of-title cases in the trade or business area are equally applicable to cases arising under the nontrade or nonbusiness section of the Code and will be so considered in the following discussion.

Respondent's position is that since in the State court proceedings the children sought to vest equitable title in themselves and legal title in newly created trusts for their benefit, the amounts expended by the trustee in defending against the suit were "expenses paid or incurred in defending or perfecting title to property." However, this does not necessarily follow. As was stated in *Industrial Aggregate Co.* v. *United States*, 284 F. 2d 639 (C.A. 8, 1960):

The decided cases, including our own, have given recognition and impetus to this standard of the regulation [i.e., the standard of defense or perfection of title to property contained in sec. 39.24(a)–2, Regs. 118, the 1939 Code equivalent of sec. 1.263(a)–2(c), Income Tax Regs., under the 1954 Code which is the

equivalent in the trade or business area of sec. 1.212–1(k), the regulation involved in this case] and hold generally that expenditures made in defense or perfection of title are capital items and are not deductible as expenses from gross income. * * *

At the same time, ever since Kornhauser v. United States, 276 U.S. 145, * * * cases recognize that the mere fact that title to property happens to be involved in litigation does not necessarily mean that expenditures of that litigation are automatically rendered non-deductible by the regulation. * * * Practicality and substance are to be recognized.[9] The test which appears to have been established is that of *primary purpose*. Thus, if the primary or sole purpose of the suit is to perfect or defend title, the expenditures are not deductible. * * * On the other hand, even though title may be involved, if its defense or perfection is not the primary purpose of the litigation, the expenditures do not encounter the barrier of the regulation's standard and they may qualify instead as ordinary and necessary expenses. * * * [Footnote omitted.]

*         *         *         *         *         *         *

* * * And whose purpose is to govern? Is it that of the taxpayer's opposition in instituting the litigation against it or is it that of the taxpayer in defending it * * * We might be inclined to the view that what is controlling is the taxpayer's purpose, in the aggregate, in taking all such steps as it feels are necessary or advisable to effect its desired result. * * *

In applying the above test of purpose to the circumstances of this case, we are of the opinion that defense of its title was not the primary purpose of the trustee in defending against the children's State court suit.

At issue in the State court proceeding was the question of the application of the doctrine of acceleration of estates in remainder to the widow's renunciation of part of the assets of Herman A. Moore Trust. The children maintained that the activation of the trusts provided in the will of Herman A. Moore for their benefit was accelerated by reason of the document executed by their mother. The trustee denied this. It is important to note that if the children succeeded in their claim, the trust property involved would be going to the remaindermen of the trust, not to a party unintended to benefit under the trust. Thus, although title was involved, the real question as regards the trustee was one of timing—do the remaindermen's interests take effect now or at a later time—the answer to which question was vital to the trustee's administration of the trust. Granted if the trustee won, such interests would not take effect until the death of the widow, but the trustee's primary purpose in defending was not to defend its title but rather to obtain a decision upon the question as to when the remaindermen's rights to the property involved were to be activated in order to aid the trustee in its management of the trust property.

That the trustee's primary purpose in defending was to obtain clarification by the court in order to aid in its trust administration, rather than defense of its title is borne out by certain of the facts stipulated by the parties and by the children's complaint in the State court action.

In the stipulated facts it is stated that "[Trustee's law] firm concluded that the plan was not consistent with the provisions of the Herman A. Moore Will, and that the trustee should obtain a court decision on the proposed plan before proceeding to take any action thereunder." Also, paragraph 13 of the children's complaint alleges that although the children have demanded that the trustee now hold the renounced property in trust for them, "defendant Bank has declined to do so without the protection of a court order."

Another factor supporting our decision is the apparent conclusion by the State court judge who heard the case that it involved a question of administration rather than of defense of title. North Carolina has adopted the Uniform Principal and Income Act. Section 12 of that Act (N.C. Gen. Stat. sec. 37–12(b)) provides that expenses of administration are normally paid out of trust income. It then provides that—

All other expenses, including * * * costs incurred in maintaining or defending any action to protect the trust or the property or assure the title thereof * * * shall be paid out of principal * * *

The court directed that the allowances involved "be paid out of the income of the trust," thereby indicating that in the court's opinion a question of administration rather than title was involved. Despite the fact that the court's conclusions as to the characterization of the nature of the suit are not determinative of a Federal income tax question, *Burnet* v. *Harmel*, 287 U.S. 103 (1932), we find it helpful in our search for the primary purpose of the State court litigation.

A useful analogy is provided by *Industrial Aggregate Co.* v. *United States, supra.* In that case the taxpayer was lessee under four leases, each of which contained a termination clause for default by the lessee of any of the covenants thereunder, and an extension provision allowing up to 10 years' extension, under certain conditions, if the lessee complied with its agreement with lessor. As the termination date of the leases approached, the lessor and the taxpayer attempted to invoke the respective termination and extension provisions of the lease. Finally, the lessor brought an action against the taxpayer-lessee in a State court, demanding forfeiture of taxpayer's estate and treble damages, under a certain Minnesota statute, in the amount of $490,000. The taxpayer in its answer denied the alleged defaults claimed and asserted two counterclaims upon which it requested equitable relief against forfeiture and a declaratory judgment that the leases had been duly extended. The court decided that the primary purpose of the litigation was "the resolution of the issue of the taxpayer-lessee's alleged violations of the operating covenants of the four leases." It then went on to state:

That the determination of this issue involved the taxpayer's consequent **right**, or lack of right, to the extension, and thus involved continuing title to the leaseholds as extended, does not make this purpose any less primary.

So in the present case, the fact that the trustee's interest in the property was extended does not make any less primary its purpose to have the court clarify the time of activation of the remaindermen's interests so as to allow the trustee to properly administer the trust.

Respondent relies heavily on the case of *Manufacturers Hanover Trust Co.* v. *United States*, 312 F. 2d 785 (Ct. Cl. 1963). In that case after the death of the life beneficiary of the trust a question arose as to the validity of the continuing trusts to the beneficiary's survivors. The taxpayer-trustee brought an action for an accounting and in that action the residuary legatee of the will under which the trust in question was established, challenged the taxpayer's title to the trust property. The court held that the primary purpose of the suit was the perfection and defense of taxpayer's title to the trust property and thus the expenses incurred were not deductible. However, in *Manufacturers Hanover*, the trustee was litigating the continuing validity of the entire trust, and if the trustee had lost, the property in question would have gone not to the remaindermen of the trust but to the residuary legatee of the will. Thus, it was not a question of timing, i.e., when a remainder interest under the trust should be activated, but rather a question of title, i.e., whether the trust and the trustee's title to the trust property were valid at all, which was at the center of the litigation in *Manufacturers Hanover*, and the court therein so held.

Nor do the other cases cited by respondent, which hold that defense of title was the primary purpose of the earlier litigation, affect in any way our decision in this case. Accordingly, we hold that the expenses incurred by petitioner in connection with the prior State court litigation were not capital expenditures incurred in defending or protecting title to property, but were deductible expenses under section 212(2).

Respondent, however, argues alternatively that if the Court should hold the attorneys' fees not to be capital expenditures, then these fees, other than the fees paid to the trustee's own counsel, are not ordinary and necessary expenses of the trust, but rather were incurred solely for the personal and family purposes of the widow and the children.

The question thus presented is whether the payment by the trust of the legal expenses of the other parties to the State court proceeding pursuant to the order of the State court are ordinary and necessary expenses of the trust. Although the judgment of the State trial court in so ordering payment by the trustee stated that the legal fees of all the parties "are ordinary and necessary expenses of the Trustee incurred in connection with the performance of the duties of administration of the trust," the State court's conclusions as to the characterization of the nature of the expenditures are not determinative of a Federal income tax question. *Burnet* v. *Harmel, supra*. Moreover, in the recent Supreme Court case of *Commissioner* v. *Estate of Bosch*, 387

U.S. 456 (1967), the Court enunciated the rule that in the application of a Federal statute, the decision of a State trial court even as to an underlying issue of State law is not controlling.

However, our independent review of the law of the State of North Carolina has satisfied us that the order of the court requiring that the trustee pay the expenses of all the parties to the litigation is proper and in accordance with the laws of that State. See N.C. Gen. Stat. sec. 6–21 (Supp. 1965);[2] *Little* v. *Wachovia Bank and Trust Co.*, 252 N.C. 229, 113 S.E. 2d 689 (1960). And as this Court stated in *Calvin Pardee Erdman*, 37 T.C. 1119 (1962), aff'd. 315 F. 2d 762 (C.A. 7, 1963):

When the legal fees of a beneficiary involved in trust litigation are ordered paid from a trust, it is because the beneficiary has benefited the trust by his involvement in the suit * * * Thus, although the beneficiary himself may have been benefited by the outcome of the suit, the advantage accruing to the trust is considered of sufficient magnitude that the beneficiary should be relieved of the burden of paying the legal fees.

This transaction is similar to that which occurs when a corporation pays the legal expenses of a stockholder who brings a derivative suit. In several instances this Court has held the payments of these expenses are properly expenditures of the corporation. *Charles Kay Bishop*, 25 T.C. 969 (1956); *Shoe Corporation of America*, 29 T.C. 297 (1957); *B. T. Harris Corporation*, 30 T.C. 635 (1958). In several situations payment by a fiduciary of the legal expenses of other parties to litigation has been treated as a proper expenditure of the fiduciary. *Loyd* v. *United States*, 153 F. Supp. 416 (1957); *Kohnstamm* v. *Pedrick*, 66 F. Supp. 410 (1946); and *Leonard A. Farris*, 22 T.C. 104 (1954), reversed on other grounds 222 F. 2d 320 (C.A. 10, 1955).[3]

In *Shoe Corporation of America*, 29 T.C. 297 (1957), discussed in the *Erdman* opinion above, respondent argued that the fees and expenses involved therein were not taxpayer's but were somebody else's. We held this argument to be without merit, reasoning that the District Court in its final decree directed that such fees and expenses should be taxed as costs and paid by the defendant corporation and that by so doing it was following the general rule that where the result of a stockholder's suit inures to the benefit of the stockholders generally the fees of the attorney for the parties instituting the action are taxed against the corporation on the theory that the corporation has been

---

[2] Sec. 6–21. Costs allowed either party or apportioned in discretion of court.—Costs in the following matters shall be taxed against either party, or apportioned among the parties, in the discretion of the court:

\*     \*     \*     \*     \*     \*     \*

(2) Caveats to wills and any action or proceeding which may require the construction of any will or trust agreement, or fix the rights and duties of parties thereunder; * * *

\*     \*     \*     \*     \*     \*     \*

The word "costs" as the same appears and is used in this section shall be construed to include reasonable attorneys' fees in such amounts as the court shall in its discretion determine and allow. * * *

[3] Although the issue to be decided in the *Erdman* case was the deductibility of the legal fees by the beneficiary, and not their deductibility by the trust, we find the Court's discussion quoted above most helpful in the case before us.

benefited and should pay the reasonable value of the services rendered to it.

Analogously, in the present case, the final judgment of the trial court directed that the legal fees for all parties to the litigation be taxed against the trust. In so doing, the trial court was exercising the discretion vested in it by North Carolina law to tax reasonable attorneys' fees against either party in any action or proceeding requiring the interpretation of a trust, and was following the general principle of trust law that attorneys' fees of a party may be charged against the trust where benefit to the trust results from the involvement of that party in the litigation.

Respondent further argues in support of his contention that the expenses involved were personal expenses of the widow and children, that a substantial portion of the fees awarded to the children's attorneys were incurred in connection with personal tax planning and consultation services rendered during the 2 years prior to the execution of the purported renunciation and subsequent filing of the complaint in the North Carolina court, and that such amounts cannot be considered to have been expended for the benefit of the trust. Respondent's argument stems from the fact that in the "Memorandum for the Court Re Attorney's Fees" filed by the children's attorneys in the State proceeding, they listed all the services performed for their clients in regard to the trust involved in suit, including personal planning previous to the institution of the action in the State court. However, the State court awarded only $8,000 for the 494 hours of work listed by the children's attorneys, an hourly rate of $16.18. On the other hand, the guardian ad litem expended 173 hours for which he received $12,000, an hourly rate of $69.36. Our conclusion drawn from this disparity is that the court, in accordance with the general trust principles described above, taxed legal fees against the trust for only so much of the services rendered by the children's attorneys as benefited the trust in that particular litigation. This conclusion is buttressed by the State court's language in its final judgment wherein it stated: "the allowances * * * for their services herein constitute reasonable compensation for the respective services rendered by said guardian ad litem and by said attorneys *in connection with the subject matter of this litigation.*" (Emphasis added.)

Accordingly, we hold that the legal expenses taxed against the trust in the State court litigation are the ordinary and necessary expenses of the trust, and are deductible by the trust pursuant to section 212(2).

Reviewed by the Court.

*Decision will be entered for the petitioner.*

Hoyt, *J.*, dissents.

TANNENWALD, *J.*, concurring : I think the use of a "primary purpose" test in cases of this type is inappropriate, because it implies that the subjective intent of the parties ought to be taken into account. I believe that, in the area of litigation expenses, it is "the origin and character of the claim with respect to which [the] expense was incurred" which controls. See *United States* v. *Gilmore*, 372 U.S. 39, 49 (1963). The rationale which underpins this mandate of the Supreme Court is equally applicable in determining whether an expenditure is a nondeductible capital item or a deductible expense within the purview of section 212 and in determining whether the expenditure is a nondeductible personal item or a section 212 deduction.

It is significant that the widow herein did not seek to make a transfer outside the will.[1] She merely renounced her rights to a specific portion of the trust in favor of the holders of the next eventual estate under the will, with a resultant gap in the testator's dispositive directions to the trustee. The gap thus created was essentially with respect *to the disposition of the income* from the renounced specific portion. The fundamental question was whether that income should be paid currently to the son or the daughter or be accumulated by the trustee until the widow's death for their benefit, or for the benefit of their issue.

To be sure, if the renunciation had been held effective, the son would probably have received his share of the corpus earlier than the decedent had provided—in all likelihood, he would attain the age of 35 while the widow was still alive. No such possibility of acquisition of corpus inured in favor of the daughter, because at all times she was only entitled to the income from her share. Concededly, the trusts for the benefit of the grandchildren might have become effective at an earlier time than specified by the testator, i.e., upon the death of the son or daughter while the widow was still living. Perhaps, also, the son and the daughter would have acquired an expanded testamentary power of appointment[2] in the sense that the exercise of such power could have become effective while the widow lived, although it is far from clear that, under the will, such powers of appointment were not in fact exercisable while the widow was alive, with disposition in accordance with the terms of exercise merely postponed until her death. But these shiftings of interest in corpus were merely incidental to the basic question arising from the renunciation, i.e., who was entitled to the income currently—the trustee, on the one hand, or the son and daughter, on the other. Cf. *Estate of Frederick Cecil Bartholomew*, 4 T.C. 349 (1944), acq. 1955-1 C.B. 3.

---

[1] The entire residuary estate was to be divided into equal shares for the benefit of decedent's children, or issue of each deceased child as a group, after the widow's death. For reasons not apparent, the will accomplished this in two bites—each trust was initially to be $100,000 under Item IV(B) and the remaining residue was then to be divided equally between the trusts under Item V.

[2] The will gave each child a testamentary power of appointment over his or her trust in favor of his or her spouse or issue or spouses of such issue.

In the foregoing context, "the origin and character of the claim with respect to which [the] expense was incurred" (see *United States* v. *Gilmore, supra*) was rooted in a *dispute over the right to income* from a specific portion of the trust. Since there is no contention herein, apart from the dispute as to the nature of the North Carolina litigation, that the allowance to the attorneys for the trustee was not "ordinary and necessary," I agree with the majority that the payment of such allowance constituted a proper deduction by the trustee either as an expense "for the management * * * of property held for the production of income" under section 212(2) or, conceivably, as an expense for "the production or collection of income" under section 212(1). Cf. *Estate of Frederick Cecil Bartholomew, supra* at 361.

In predicating my analysis on the existence of a dispute over the right to income, I do not mean to imply that legal fees incurred by a fiduciary on its own behalf, in connection with other disputes involving rights to the assets subject to fiduciary administration, may not also be deductible under appropriate circumstances. I am not convinced that *Manufacturers Hanover Trust Co.* v *United States*, 312 F. 2d 785 (Ct. Cl. 1963), so heavily relied upon by respondent, is correct in applying to cases of the type involved herein the usual distinctions as to defense of title and in drawing the line between disputes under and disputes *dehors* the governing instrument. Cf. *Loyd* v. *United States*, 153 F. Supp. 416 (Ct. Cl. 1957); see *Trust of Harold B. Spero*, 30 T.C. 845, 856 (1958). In any event, that case is clearly distinguishable. The issue therein turned upon who was entitled to the trust estate upon the death of the life beneficiary—the trustee or a third party not directly interested in the trust, i.e., the grantor's estate. In holding that the origin and character of the underlying claim involved a question of title (see 312 F. 2d at 790), the Court of Claims carefully noted (also at page 790) that—

This situation is to be distinguished from that which would arise if a fiduciary sought to deduct expenses incurred in determining which of *several potential beneficiaries was entitled to receive trust property.* [Emphasis added.]

The allowances to the guardian ad litem and to the attorneys for the widow, son, and daughter present a somewhat different issue. The "origin and character of the claim" with respect to which these expenses were incurred is, of course, the same as that involved in the allowances to the attorneys for the trustee. In addition, these expenses were paid by the trustee pursuant to a court order which characterized them as "ordinary and necessary," although, as the majority points out, this is not determinative for tax purposes. Clearly, the trustee was entitled in the North Carolina litigation to a determination binding on all interested parties and this required representation of the minor grandchildren and unborn grandchildren, who were legally incapable of representing themselves. On this basis, I think the payment of the

allowance to the guardian ad litem constituted an ordinary and necessary expense of the trustee and is therefore deductible under section 212.

The allowances to the attorneys for the widow, son, and daughter present a more difficult question. While they were required to be parties to the litigation in order to give the trustee full protection, they were adults and consequently were in a different category with respect to the necessity of legal representation. Realistically, the allowances were incurred in an effort to acquire rights for the son and daughter by sustaining the widow's renunciation. The foundation for the litigation was self-created, i.e., by the parties themselves, unlike the situation in *Calvin Pardee Erdman*, 37 T.C. 1119 (1962), where the litigation involved the original instrument itself. Both the trustee and the North Carolina court had the benefit of legal counsel acting on behalf of the trustee and the guardian ad litem, so it is hard to see how the involvement of other attorneys in the litigation benefited the trust. Indeed, the position taken by those attorneys, if successful, would have denied the trustee's right to accumulate income. Under these circumstances, I do not think the theory that allowances to attorneys of trust beneficiaries are made to benefit the litigants, advanced in *Calvin Pardee Erdman, supra,*[3] is applicable. *Shoe Corporation of America*, 29 T.C. 297 (1957), relied upon by the majority, is beside the point. In that case, the taxpayer itself recovered money in the litigation with respect to which the expenses were paid.

In view of the foregoing, I am of the view that the amounts paid by the trustee as allowances to the attorneys for the widow, son, and daughter are not "ordinary and necessary expenses" of the trust. Rather, they constituted distributions for the benefit of those individuals. However, since these expenses were directed by the North Carolina court to be charged against income, they would appear to be deductible by the trust as an "amount of income * * * required to be distributed currently."[4] Sec. 661(a). On this basis, the ultimate decision of the majority in respect of these items is correct. Under the foregoing approach, the distributable income, represented by the amount of such allowances, might well be includable in the gross income of these beneficiaries under section 662, but we need not decide this issue, since neither the widow, son, nor daughter is a party to the within proceeding. For the same reason, we need not decide whether the amounts would then be deductible by them as "ordinary and necessary

---

[3] We note that this case involved the deductibility by the beneficiary of expenses paid by the trustee and charged against principal. The question whether such expenses were deductible as "ordinary and necessary" by the trustee was not involved, since, under the 1939 Code, which was applicable to that case, expenses charged against principal were not deductible in determining distributable net income. See 37 T.C. at 1123.

[4] The will provided for discretionary distributions, under certain circumstances, for the benefit of the widow and children.

expenses" under section 212. Compare *Marion A. Burt Beck*, 15 T.C. 642, 670 (1950), affirmed per curiam 194 F. 2d 537 (C.A. 2, 1952), with *Stella Elkins Tyler*, 6 T.C. 135 (1946).

DRENNEN and TIETJENS, *JJ.*, agree with this concurring opinion.