T.C. Memo. 1999-259


UNITED STATES TAX COURT


RUBY JEAN STEVENS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 18012-97.                    Filed August 4, 1999.


<u>Kevin "D" Watley</u>, for petitioner.

<u>William F. Castor</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  Respondent determined the following
deficiencies and accuracy-related penalties with respect to
petitioner's Federal income taxes:

| Year | Deficiency | Accuracy-related penalty sec. 6662(a) |
|------|-----------|----------------------------------------|
| 1993 | $3,803 | $761 |
| 1994 | 17,323 | 3,465 |

After concessions,[1] the sole issue[2] for consideration is whether certain professional fees incurred by petitioner in connection with litigation involving a trust of which she was a trustee and beneficiary were deductible under section 212 or were capital

_____

[1]Respondent has conceded the following: (a) Petitioner is entitled to deduct legal and other professional fees of $5,806 and legal and accounting fees of $2,974 relating to "Rent-Red Stevens, Inc." as claimed on petitioner's 1993 return; (b) of the $1,859 in fees claimed on petitioner's 1993 return, petitioner is entitled to deduct $665 on Schedule E and $845 on Schedule A; (c) of the $13,569 in fees claimed on petitioner's 1994 return, petitioner is entitled to claim $927 on Schedule E; and (d) petitioner is not liable for the accuracy-related penalty authorized by sec. 6662 for either of the years at issue.

Petitioner has conceded the following: (a) Petitioner is not entitled to charitable contribution deductions in excess of $1,006 and $6,424 with respect to taxable years 1993 and 1994 respectively; and (b) petitioner's medical expenses for the taxable year 1993 total $13,734, not $12,654. Other adjustments at issue in this case (i.e., adjustments to itemized deductions and dependency exemptions) are computational.

[2]Respondent's statement of the issues presented differs from petitioner's in one material respect. Respondent states that an issue has been raised concerning the deductibility of the professional fees under sec. 162. Petitioner, however, has stated consistently throughout her opening and reply briefs that it is not necessary to address whether she was in the trade or business of being a trustee, preferring instead to argue her case under sec. 212 and related regulations. Because petitioner has not presented any argument regarding sec. 162, we do not address it.

expenditures under section 263.[3]  We hold that the professional

fees at issue were capital expenditures under section 263.

### FINDINGS OF FACT

Most of the relevant facts have been stipulated and are so

found.[4]  The stipulation of facts and supplemental stipulation of

facts are incorporated herein by this reference.

Petitioner resided in Gracemont, Oklahoma, at the time the

petition in this case was filed.

On January 18, 1990, petitioner's husband, S.G. "Red"

Stevens (Mr. Stevens), as grantor, executed a Trust Agreement

establishing a revocable inter vivos trust (the Trust) under the

laws of the State of Oklahoma and designating Mr. Stevens as

Trustee.  Mr. Stevens' property was transferred to, and

thereafter owned by, the Trust.

Pursuant to the terms of the Trust Agreement, all Trust

income was either distributed to Mr. Stevens or added to the

principal of the Trust during his lifetime.  For Federal income

tax purposes, the Trust was classified as a grantor trust.

---

[3]All section references are to the Internal Revenue Code as
in effect for the taxable years at issue, and all Rule references
are to the Tax Court Rules of Practice and Procedure.  Monetary
amounts are rounded to the nearest dollar.

[4]Our findings include a correction of a typographical error
in par. 28 of the stipulation of facts; i.e., "1994" is changed
to "1993".

On January 29, 1990, Mr. Stevens executed a First Amendment to the Trust Agreement, modifying the estate tax apportionment provisions of the Trust. (The Trust Agreement and the First Amendment are collectively hereinafter referred to as "the Trust documents".)

On December 3, 1991, Mr. Stevens died. Under the terms of the Trust Agreement, the Trust became irrevocable upon his death, and petitioner, who was Mr. Stevens' second wife, became the Successor Trustee. Petitioner was also a beneficiary of the Trust.

The Trust Agreement instructed petitioner, the Successor Trustee, to distribute $100,000 and certain other property to Mr. Stevens' son from his first marriage, Matron Garland Stevens (Garland). The Trust Agreement further instructed petitioner to distribute certain real property to Sedra Jean Farrow (Sedra), the daughter of Mr. Stevens and petitioner. These distributions were made in accordance with the Trust documents.

After the distributions were made to Garland and Sedra, the balance of the Trust property was distributed by petitioner, as Successor Trustee, to herself as the Trustee of a Marital Trust created by the Trust Agreement for her benefit. As beneficiary of the Marital Trust, petitioner is entitled to receive the net income from the Marital Trust as well as discretionary distributions of principal. In addition, petitioner has been

granted a general testamentary power of appointment. In the event petitioner does not exercise her power of appointment, the remaining Trust principal and income will be distributed to Sedra upon petitioner's death.

The Trust Agreement also provides that, if any person initiates legal proceedings to invalidate the Trust or to claim an interest in the Trust, except as otherwise provided in the Trust Agreement, the Trustee shall distribute $1 to such person, and, if such person is a beneficiary of the Trust, that person shall not receive any benefits under the Trust Agreement.

Under the terms of the Trust Agreement, the Trustee is required to furnish an annual accounting to each beneficiary who is entitled to receive Trust income or principal. On May 18, 1993, Garland's attorney wrote to petitioner's attorney demanding an accounting for Trust beneficiaries. At that time, Garland was not an income beneficiary, and all principal distributions to which he was entitled under the terms of the Trust Agreement had been made to him.

On December 2, 1993, Garland filed a lawsuit against petitioner, individually and as beneficiary and Successor Trustee of the Marital Trust, and Sedra. The complaint initiating the lawsuit stated five "claims for relief" against petitioner and Sedra. They were as follows:

First Claim for Relief--Cancellation, Revocation and Recision of the Trust;

Second Claim for Relief--Conversion/Fraud;

Third Claim for Relief--Tortious Interference with Expectancy;

Fourth Claim for Relief--Constructive Trust; and

Fifth Claim for Relief--Punitive Damages.

Each of the claims for relief contained or incorporated allegations (1) that Mr. Stevens "was mentally incompetent and/or did not possess sufficient mental comprehension to understand his actions in signing the Trust documents"; (2) petitioner and Sedra "caused, induced, deluded, misled, forced, and/or unduly influenced [Mr. Stevens] into signing" the Trust documents; and (3) the Trust documents "are invalid testamentary documents and void as a matter of law".  None of the claims for relief in the lawsuit contained any allegation that petitioner improperly distributed Trust income, failed to carry out a provision of the Trust Agreement, failed to render an accounting to Trust beneficiaries, or otherwise failed to administer the Trust properly.

Petitioner was advised by her attorneys that it was her duty, as Trustee, to defend against the lawsuit and to take a position in support of the validity of the Trust Agreement.

Petitioner diligently defended against the lawsuit on behalf of the Trust.

The District Court of Caddo County, State of Oklahoma (the trial court), dismissed the third claim for relief prior to trial. Following a nonjury trial, the trial court sustained petitioner's demurrer to the evidence of undue influence, determined that the Trust was valid, enforced the no-contest clause, and ordered Garland to return all property he had received from the Trust. Garland appealed the trial court's ruling to the Oklahoma Supreme Court, which affirmed the decision of the trial court.

On her Federal income tax returns for the taxable years 1993 and 1994, petitioner deducted professional fees incurred in connection with the lawsuit. After concessions, the fees remaining at issue are $350 deducted on the 1993 return and $53,014 deducted on the 1994 return.

                    ULTIMATE FINDINGS OF FACT

The lawsuit was brought by Garland as an heir to Mr. Stevens' estate and not as a beneficiary of the Trust. The lawsuit did not allege mismanagement of the Trust but, instead, sought to invalidate the Trust. Garland's claims in the lawsuit and his demand of an accounting originated in his desire to gain a larger share of Mr. Stevens' estate than was provided under the terms of the Trust Agreement. The lawsuit was defended by

petitioner to protect the validity of the Trust and the Trust's title to Trust property.

OPINION

Section 212 authorizes a deduction for ordinary and necessary expenses paid or incurred for, inter alia, the management, conservation, or maintenance of property held for the production of income.[5]  To satisfy the requirements of section 212, the expenditure must be reasonable in amount and must bear a reasonable and proximate relationship to the management, conservation, or maintenance of property held for the production of income.  See Bingham Trust v. Commissioner, 325 U.S. 365, 370 (1945).

The terms "management", "conservation", and "maintenance" have been construed to refer to the protection, safeguarding, or upkeep of physical assets and not to the taxpayer's retention of

---

[5]SEC. 212.  EXPENSES FOR PRODUCTION OF INCOME.

In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year--

(1) for the production or collection of income;

(2) for the management, conservation, or maintenance of property held for the production of income; or

(3) in connection with the determination, collection, or refund of any tax.

ownership of the property. See United States v. Gilmore, 372 U.S. 39, 44 (1963); Reed v. Commissioner, 55 T.C. 32, 42 (1970); Duntley v. Commissioner, T.C. Memo. 1987-579. Therefore, to be deductible under section 212, professional expenses must be directly connected or proximately related to the management, conservation, or maintenance of the property. See Bingham Trust v. Commissioner, supra at 375; Duntley v. Commissioner, supra.

Conversely, expenditures paid or incurred in defending or perfecting title to property, such as legal expenses in a suit to quiet title to real estate and expenses paid to protect one's right to property of a decedent as a beneficiary under a testamentary trust, constitute a part of the cost of property and are not deductible expenses. See Woodward v. Commissioner, 397 U.S. 572, 575 (1970); Boagni v. Commissioner, 59 T.C. 708, 711-712 (1973); sec. 1.212-1(k), Income Tax Regs.; see also sec. 1.263(a)-2(c), Income Tax Regs., which classifies "The cost of defending or perfecting title to property" as a capital expenditure.

Petitioner contends that the disallowed professional fees at issue in this case are deductible under section 212, because (1) defending against the lawsuit protected her taxable income stream, and (2) the fees were ordinary and necessary expenses incurred in that effort. Petitioner also contends that the disallowed professional fees qualify as ordinary and necessary

litigation expenses incurred in connection with the performance of her duties of administration within the meaning of section 1.212-1(i), Income Tax Regs. Respondent contends that the disallowed professional fees represent capital expenditures within the meaning of section 263, because the fees were incurred to defend the validity of the Trust and its title to Trust property. We agree with respondent.

Whether professional fees incurred in connection with litigation are deductible expenses under section 212, or are capital expenditures under section 263, requires an examination of the origin of the claims giving rise to the professional fees. See United States v. Gilmore, supra at 49 ("the origin and character of the claim with respect to which an expense was incurred, rather than its potential consequences upon the fortunes of the taxpayer, is the controlling basic test of whether the expense was 'business' or 'personal'"); Boagni v. Commissioner, supra at 712-713.

This Court has applied the origin-of-the-claim test to evaluate the deductibility of litigation expenses under both section 162 and section 212 and has extended the origin-of-the-claim test to cases involving the defense or perfection of title to property. See Boagni v. Commissioner, supra at 713 (citing Reed v. Commissioner, 55 T.C. 32, 39-41 (1970)); see also sec. 1.212-1(k), Income Tax Regs., which provides in pertinent part:

(k) Expenses paid or incurred in defending or perfecting title to property, in recovering property (other than investment property and amounts of income which, if and when recovered, must be included in gross income), or in developing or improving property, constitute a part of the cost of the property and are not deductible expenses. * * * Expenses paid or incurred in protecting or asserting one's rights to property of a decedent as heir or legatee, or as beneficiary under a testamentary trust, are not deductible.

Petitioner contends that respondent mischaracterizes the professional fees incurred to defend Garland's lawsuit as costs to defend title to Trust property and/or to protect rights to property within the meaning of section 1.212-1(k), Income Tax Regs., because, according to petitioner, none of the claims for relief involved the acquisition or defense of title to property. Petitioner cites Estate of Kincaid v. Commissioner, T.C. Memo. 1986-543, in support of her contention that, where the origin of the claim was the prevention of conduct which would be detrimental to her interest as income beneficiary, the litigation costs are deductible. Petitioner argues that, just like the taxpayer in Estate of Kincaid, she defended the lawsuit in her capacity as income beneficiary to prevent impairment of the production and collection of income from Trust assets.

Petitioner misapplies our decision in Estate of Kincaid v. Commissioner, supra. In Estate of Kincaid, the taxpayer's husband established a trust for which a bank was trustee. Under the terms of the trust agreement, the bank was required to pay

the taxpayer monthly installments of income from the trust property and, at the taxpayer's direction, to distribute limited amounts of principal. Because the taxpayer believed that she was not receiving the amount of income from the trust to which she was entitled, she sued the bank, alleging in her complaint conflicts of interest, breach of fiduciary duty, and trust mismanagement.

In Estate of Kincaid, we quoted Boagni v. Commissioner, supra at 713, which described the objective of the "origin-of-the-claim" analysis and the manner in which it was to be conducted as follows:

> the 'origin-of-the-claim' * * * inquiry is directed to
> the ascertainment of the 'kind of transaction' out of
> which the litigation arose. Consideration must be
> given to the issues involved, the nature and objectives
> of the litigation, the defenses asserted, the purpose
> for which the claimed deductions were expended, the
> background of the litigation, and all facts pertinent
> to the controversy.

Estate of Kincaid v. Commissioner, supra. Applying this analysis, we concluded that the litigation costs incurred by the taxpayer were deductible under section 212, since "The origin and character of the 'claim' or protection sought by * * * [the taxpayer] had its source in the management and conservation of income-producing property in which * * * [the taxpayer] held an interest as an income beneficiary." Id. We arrived at this conclusion based on evidence that the taxpayer "believed that she was receiving less than her anticipated amount of income because

of mismanagement and waste of the Trust assets by the trustee".
Id.  In fact, the taxpayer's attorney in the lawsuit testified
that "a goal of his law firm was to 'get what was considered a
fair administration of the trust to those people who were
intended to be the beneficiaries of the trust'".  Id.

The belief that the trust in Estate of Kincaid was being
mismanaged to the detriment of the taxpayer's interest as income
beneficiary was the origin of the claims made in the lawsuit, and
we so found, holding that the expenses were deductible for the
management, conservation, or maintenance of property held for the
production of income under section 212.  See id.

In the case before us, however, it is clear that the lawsuit
had nothing to do with alleged abuses in the administration of
the Trust.  In fact, the lawsuit was a direct attack on the
validity of the Trust.  Garland's claims--undue influence, lack
of capacity, conversion, fraud, etc.--were all alternate theories
to invalidate the Trust and gain a larger share of his father's
estate.  Each claim for relief was based on allegations that Mr.
Stevens was mentally incompetent and that petitioner caused,
induced, deluded, misled, forced, and/or otherwise unduly
influenced Mr. Stevens to execute the Trust.  None of the claims
included allegations of mismanagement or waste of Trust assets,
or diversion of Trust income.

Garland's claims originated in his attempt, albeit unsuccessful, to invalidate the Trust and acquire an interest in the Trust assets. Unlike the Estate of Kincaid case, the professional fees were incurred by petitioner in a dispute over title to property between Garland and the Trust. Such expenses are nondeductible capital expenditures. See secs. 1.212-1(k) and 1.263(a)-2(c), Income Tax Regs.; see also Boagni v. Commissioner, 59 T.C. at 713; Arthur H. DuGrenier, Inc. v. Commissioner, 58 T.C. 931, 938 (1972); Seidler v. Commissioner, 18 T.C. 256 (1952); Duntley v. Commissioner, T.C. Memo. 1987-579.

Petitioner bases a second argument for deductibility of her professional fees on the fact that she incurred the expenses in her role as Successor Trustee. Petitioner argues that her fiduciary duty to defend the Trust renders the professional fees deductible as ordinary and necessary expenses of Trust administration, citing section 1.212-1(i), Income Tax Regs. There is no higher or more important duty than defending a trust against attack, petitioner contends, and thus her legal fees must be deductible. Respondent counters that, since the legal fees associated with petitioner's duties of administration originated in the defense of the Trust, the fees are capital expenditures under the origin-of-the-claim test.

Section 1.212-1(i), Income Tax Regs., provides:

> (i) Reasonable amounts paid or incurred by the fiduciary of an estate or trust on account of

administration expenses, including fiduciaries' fees
and <u>expenses of litigation, which are ordinary and
necessary in connection with the performance of the
duties of administration are deductible under section
212</u> notwithstanding that the estate or trust is not
engaged in a trade or business * * *   [Emphasis added.]

The phrase "duties of administration" is not defined in section
1.212-1(i), Income Tax Regs.  Petitioner would have us define it
in this case to include the defense of a lawsuit in which a
trustee is sued, regardless of the nature of the claims asserted,
arguing that a trustee has a fiduciary duty to defend any lawsuit
which threatens the integrity and operation of the Trust.
Petitioner relies on our decisions in <u>Moore Trust v.
Commissioner</u>, 49 T.C. 430 (1968) and <u>Estate of Barnhart v.
Commissioner</u>, T.C. Memo. 1959-42, to support her argument.[6]

Again, we must reject petitioner's position.  An examination
of the cited cases reveals why.

In <u>Moore Trust</u>, a trustee sought judicial interpretation of
the trust instrument to determine whether the remainder interests
could be accelerated following the life tenant's renunciation of
her interest in the trust.  The litigation at issue did not
involve any claim that the trust was invalid but was filed to
resolve an interpretive issue raised by the trust agreement
impacting directly on the manner in which the trust would be

---

[6]We accept, arguendo, petitioner's contention that she owed
a fiduciary duty to defend the Trust against Garland's lawsuit.
See <u>First Natl. Bank v. Stricklin</u>, 347 P.2d 652 (Okla. 1959).

administered.  There, we held that the lawsuit primarily[7] involved claims related to the trust's administration, rather than title, and thus a deduction under section 212 was allowed. See Moore Trust v. Commissioner, supra.

In the Estate of Barnhart case, the underlying lawsuit involved nine specific claims which can be grouped into two general sets of claims.  Under the first set of claims, the plaintiffs charged the taxpayer with waste and mismanagement of the trust, seeking to have her removed as trustee and have the wasted assets restored.  The second set of claims alleged that the taxpayer lacked the power to appoint beneficiaries of the trust by will, and that the plaintiffs, as heirs at law, were entitled to the corpus upon the death of the taxpayer.  The validity of the trust and the taxpayer's right to receive all the income therefrom were unchallenged.  As the taxpayer was elderly and without descendants, we concluded that her principal purpose in challenging the plaintiffs' assertion of remainder rights was to preclude their challenge to her continued administration of the trust.[8]  Therefore, we held that, because the suit was principally related to the trust's management and not its title

---

[7]Although we no longer use the primary-purpose test, application of the origin-of-the-claim test in that case would not have materially changed our decision.  See Moore Trust v. Commissioner, 49 T.C. 430, 443-446 (1968) (Tannenwald, J., concurring).

[8]See supra note 7.

to trust assets, the legal expenses incurred in defense of the lawsuit were deductible.

Moore Trust v. Commissioner, supra, and Estate of Barnhart v. Commissioner, supra, are distinguishable from the present case because the principal focus of Garland's lawsuit was to invalidate the Trust. Distilled to their essence, Garland's claims originated in his attempt to obtain a larger share of Mr. Stevens' estate. The claims required the trial court to address whether the Trust received title to the corpus validly or by virtue of undue influence. The origin of the claims in Garland's lawsuit was Garland's desire to eliminate the Trust. Only then could he assert a claim to the assets as Mr. Stevens' heir.

In a final effort to salvage some part of a deduction for the litigation costs which she incurred, petitioner argues that, at a minimum, we should allocate the costs among the various claims for relief contained in Garland's complaint and then allow a deduction for that portion of the costs that qualifies for deduction under section 212. She cites Dye v. United States, 121 F.3d 1399, 1406 (10th Cir. 1997),[9] in support. Although the decision in Dye v. United States stands for the proposition that an allocation must be made among different causes of action in appropriate cases, this is not such a case. The claims for

---

[9]The present case is appealable to the Court of Appeals for the Tenth Circuit.

relief asserted in Garland's lawsuit were not separate and distinct causes of action but, instead, were an amalgam of theories for invalidating the Trust (e.g., undue influence and fraud) and remedies to enhance his potential recovery (e.g., constructive trust and punitive damages). This is confirmed by the testimony of petitioner's attorney who testified at trial that "the first claim, the second claim, and the fourth claim basically merge. They're the same issues factually. They're just different theories, pled in the alternative * * * involving an element of fraud".

Petitioner's attorney also testified that 75 percent of his fees were allocated to the first, second, and fourth claims and that 25 percent was allocated to the third claim for relief which alleged tortious interference with an expectancy and was dismissed prior to trial. Petitioner's attorney confirmed that the allocation was not based on precise recordkeeping but rather was an estimate. The allocation is not controlling here for several reasons. The first is that the allocation was made among claims for relief which suffer from the same infirmity--each one is grounded in an attempt to invalidate the Trust. Regardless of whether an allocation is made, none of the costs so allocated are deductible because they do not satisfy the standard for deductibility under section 212. The second reason is that petitioner has failed to prove that the allocation is anything

more than a guess made to salvage some part of a deduction out of that which is simply not deductible. The professional fees at issue were incurred in defending a lawsuit which sought to invalidate the Trust. An allocation with respect to the various claims for relief, even if made, would not change our conclusion or the result that flows from it. The professional fees are not deductible under section 212; they are capital expenditures under section 263.

We have carefully considered all remaining arguments made by petitioner for a result contrary to that expressed herein, and, to the extent not discussed above, we find them to be irrelevant or without merit.

Conclusion

The professional fees incurred by petitioner in connection with the Trust litigation had their origin in a dispute over title to property. Therefore, those fees must be capitalized.

To reflect the foregoing and the concessions by both parties,

Decision will be entered

under Rule 155.